**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 30, 2014**

# In the Court of Appeals of Georgia

A14A1222. FREEMAN v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Tracey Freeman on one count of trafficking in cocaine and one count of possession of less than one ounce of marijuana. On appeal, Freeman contends that the evidence was insufficient to support the trafficking conviction because the State failed to prove that he had knowledge of the weight of the cocaine and that the trial court erred in admitting the out-of-court statements of a confidential informant, which violated his right to confrontation under the Sixth Amendment to the United States Constitution.[1] Although we find that the evidence

---

[1] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him . . . ."); *see also* Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

was sufficient to support the jury's verdict that Freeman was guilty of trafficking, we agree that the trial court erred in admitting the confidential informant's out-of-court statements, and, therefore, we reverse Freeman's convictions.

Viewed in the light most favorable to the jury's verdict,[2] the record shows that in July 2006, Atlanta Police officers set up surveillance on a house located at 1718 Thoms Drive based on complaints from neighbors, who believed that illegal drug sales were occurring there. And after observing numerous individuals going in and out of the house for very brief periods of time, at all hours of the day and night, the police believed that the neighbors' suspicions were well-founded. Consequently, in the early afternoon on July 25, 2006, an officer sent a confidential informant ("CI") into the house to attempt to make a controlled purchase of illegal drugs. A few minutes later, the CI exited the house and returned to the officer, having successfully bought a small quantity of crack cocaine. Based on this information, the officer quickly obtained a search warrant for the residence.

Later that same afternoon, the officer and several other members of the Atlanta Police Department's narcotics squad returned to the Thoms Drive address to execute the search warrant. And upon entering the house, the officers noticed that it was

---

[2] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

sparsely furnished with only one bedroom containing any furniture. In that bedroom, the officers encountered Freeman and found a small amount of marijuana and powder cocaine on a laptop computer. Additionally, in the same bedroom, the officers found clothes and shoes that appeared to belong to Freeman as well as some mail addressed to him at 1718 Thoms Drive. Consequently, Freeman was arrested. Elsewhere in the house, the officers encountered Freeman's four uncles, whom they arrested solely on disorderly conduct charges. Shortly thereafter, a K-9 unit arrived, and the dog quickly alerted the officers to a vent on the floor in the bedroom, in which the officers found a bag containing 50.62 grams of crack cocaine.

Thereafter, Freeman was charged, via indictment, with one count of trafficking in cocaine[3] and one count of possession of less than one ounce of marijuana.[4] At Freeman's trial, several of the Atlanta police officers involved in the case testified regarding their search of the house, and the lead officer also testified as to the details of the CI's controlled buy, which resulted in him successfully obtaining the search

---

[3] *See* former OCGA § 16-13-31 (a) (1). The version of the statute applicable to Freeman was effective July 1, 2003 to June 30, 2012. *See* Ga. L. 2003, p. 177, § 4; Ga. L. 2012, Act 709, § 3-8. The present version of the statute became effective July 1, 2013. *See* Ga. L. 2013, Act 84, § 4.

[4] *See* OCGA § § 16-13-30 (j) (1); 16-13-2 (b).

warrant. In addition, a GBI forensic chemist testified that the crack cocaine recovered by law enforcement weighed 50.62 grams and had a purity of 82 percent. The State also introduced similar-transaction evidence, showing that over the course of the last ten years, Freeman had five prior convictions for various illegal drug offenses, including three convictions for possession of cocaine with intent to distribute and two for possession of marijuana with intent to distribute.

Freeman testified in his own defense and claimed that he (1) did not live at the house (which was actually rented by his uncles), and (2) was only there that day to use the computer to complete his homework for culinary school. Freeman also denied having any knowledge of the cocaine or marijuana found in the bedroom. Additionally, Freeman's mother, his girlfriend, a long-time friend, and three of his uncles testified that Freeman did not live at the 1718 Thoms Drive residence but visited there occasionally to use the computer for his school work. Nevertheless, at the trial's conclusion, the jury found Freeman guilty on both counts, and the court imposed a 30-year sentence, with 20 years to be served in confinement. Subsequently, Freeman filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

1. Freeman contends that the evidence was insufficient to support his conviction for trafficking in cocaine because the State failed to prove that he had knowledge of the weight of the drug. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be "viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[5] And we do not weigh the evidence or determine witness credibility but only consider whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[6] Thus, the jury's verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7] With these guiding principles in mind, we turn now to Freeman's specific claim of error.

---

[5] *Davenport v. State*, 308 Ga. App. 140, 142 (1) (706 SE2d 757) (2011); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[6] *Davenport*, 308 Ga. App. at 142-43 (1) (punctuation omitted). *see Jackson*, 443 U.S. at 319 (III) (B).

[7] *Davenport*, 308 Ga. App. at 143 (1) (punctuation omitted).

At the time of Freeman's arrest in 2006 and his trial in 2009, former OCGA § 16-13-31 (a) (1),[8] in relevant part, provided: "Any person who *knowingly* sells, manufactures, delivers, or brings into this state or who is *knowingly* in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in cocaine . . . ."[9] And in the recently decided case of *Scott v. State*,[10] the Supreme Court of Georgia held that "[t]he plain language of the version of former OCGA § 16–13–31 (a) (1) at issue dictates the conclusion that knowledge of the quantity of the drug was an element of the crime."[11] Specifically, our Supreme Court found that the cocaine-trafficking statute contained "express scienter requirements, that is, knowledge of the nature and amount of the drug and of being in possession of it,"[12] and that "where 'knowledge' is made part of an offense, the

---

[8] *See supra* note 3.

[9] Former OCGA § 16-13-31 (a) (1) (2003) (emphasis supplied).

[10] 295 Ga. 39 (757 SE2d 106) (2014).

[11] *Id.* at 40 (1) (footnote omitted).

[12] *Id.*

State has the burden to prove the defendant's guilty knowledge."[13] Nevertheless, a jury may find criminal intention, *i.e.*, knowledge, "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[14] Indeed, both knowledge and possession may be proved, "like any other fact, by circumstantial evidence."[15]

And here, the evidence shows that the crack cocaine which Freeman was convicted of possessing had a purity of 82 percent and weighed 50.62 grams—nearly *two times* the trafficking threshold weight of 28 grams—and was packaged in a plastic bag and hidden in a vent in a bedroom that Freeman was apparently occupying. Furthermore, the jury heard evidence of five similar transactions, including Freeman's three convictions for possession of cocaine with the intent to distribute. More specifically, in one of those previous cases, Freeman was found to

---

[13] *Id.*; *accord Phagan v. State*, 268 Ga. 272, 278 (3) (c) (486 SE2d 876) (1997).

[14] OCGA § 16-2-6.

[15] *Lott v. State*, 303 Ga. App. 775, 779 (1) (694 SE2d 698) (2010) (punctuation omitted); *see also Abernathy v. State*, 278 Ga. App. 574, 578 (630 SE2d 421) (2006) (same); *cf. Waterman v. State*, 114 Ga. 262 (40 SE 262, 264) (1901) ("The knowledge that the representations were false must be proven to exist before the offense charged is made out. Such knowledge may, however, be proven by circumstances, including the opportunities which the accused had to ascertain the facts; but it must be proven in some way to the satisfaction of the jury, before a conviction is authorized.").

be in possession of nearly 26 grams of cocaine, and in another, he was found to be in possession of 19 grams of the drug. Given these circumstances, there was sufficient evidence showing that Freeman had knowledge of the weight of the cocaine found in the search of the Thoms Drive residence.[16]

2. Freeman also contends that the trial court erred in admitting the out-of-court statements of the CI, arguing that this evidence violated his right to confrontation under the Sixth Amendment to the United States Constitution. We agree.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[17] This fundamental right is a "bedrock procedural guarantee [that]

---

[16] *See Harrison v. State*, 309 Ga. App. 454, 458-59 (2) (b) (711 SE2d 35) (2011) (holding that any error in the trial court's failure to instruct the jury that the State could convict only if it proved that defendant knew that the cocaine in his possession had a weight of 28 grams or more, was harmless, as defendant's conviction was based on possession of a cocaine mixture that weighed far more than 28 grams and similar-transaction evidence showing that defendant had enough experience handling cocaine to know that the cocaine in his possession weighed more than 28 grams).

[17] U.S. Const. amend. VI; *see also see also* Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

8

applies to both federal and state prosecutions,"[18] and is a "concept that dates back to Roman times."[19]And in 2004, the Supreme Court of the United States clarified the original public meaning and scope of the right to confrontation of one's accusers in *Crawford v. Washington*,[20] holding that when the admission of "testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."[21] But when the

---

[18] *Crawford v. Washington*, 541 U.S. 36, 42 (II) (124 SCt 1354, 158 LE2d 177) (2004); *see also Pointer v. Texas*, 380 U.S. 400, 406 (II) (85 SCt 1065, 13 LE2d 923) (1965).

[19] *Crawford*, 541 U.S. at 43; *see also Coy v. Iowa*, 487 U.S. 1012, 1015 (108 SCt 2798, 101 LEd2d 857) (1988) ("The Sixth Amendment gives a criminal defendant the right to be confronted with the witnesses against him. This language comes to us on faded parchment, with a lineage that traces back to the beginnings of Western legal culture.") (punctuation and citation omitted); *Philpot v. State*, 309 Ga. App. 196, 198–99 (709 SE2d 831) (2011); Frank R. Herrmann & Brownlow M. Speer, *Facing the Accuser: Ancient and Medieval Precursors of the Confrontation Clause*, 34 VA. J. INT'L L. 481, 483 (1994) ("The principle of confrontation, in the sense of the right of defendants to have accusing witnesses produced before them, developed along three main lines, each originating in Roman law.").

[20] 541 U.S. at 68 (V) (C).

[21] *Id.*; *see also Michigan v. Bryant*, ___ U.S. ___ (131 SCt 1143, 1153, 179 LEd2d 93) (2011) ("We therefore limited the Confrontation Clause's reach [in *Crawford*] to testimonial statements and held that in order for testimonial evidence to be admissible, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.") (citation and punctuation omitted); *Pitts v. State*, 280 Ga. 288, 288 (627 SE2d 17) (2006)( holding

statement at issue is non-testimonial in nature, "the State's normal rules regarding the admission of hearsay apply."[22]

Although the Supreme Court did not specifically outline the parameters for determining whether a statement can be characterized as testimonial in *Crawford*, it did explain that such testimony is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact."[23] Accordingly, the Confrontation Clause prohibits "the introduction of a formal statement to a government officer made in an effort to establish an evidentiary case, such as that which occurs during a police investigation."[24] Additionally, the Supreme Court in *Crawford* found that a statement might also be considered testimonial if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[25]

---

that "the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.").

[22] *Pitts*, 280 Ga. at 288.

[23] *Crawford*, 541 U.S. at 51 (III) (A) (punctuation omitted).

[24] *Id*.; *accord Pitts*, 280 Ga. at 288.

[25] *Crawford*, 541 U.S. at 51-52 (III) (A); *accord Pitts*, 280 Ga. at 288-89.

At the trial of this matter, during the cross-examination of the police officer who set up the CI's controlled buy, Freeman's counsel asked if the CI provided a general description of the person who sold him the crack cocaine. The officer responded that the affidavit in support of the search warrant only indicated that the CI purchased the drugs from a "black male," but that any additional information would have been included in his "buy report," which he did not currently have. At that point, Freeman's counsel requested that the State provide a copy of the buy report, and he reiterated this request a short time later after the jury was excused for the evening. The State asserted that it did not have the buy report and that, regardless, the defendant was not entitled to it. But the trial court disagreed and ruled that if the report could be located, the defendant was entitled to, at the very least, have it reviewed in camera for potential impeachment or exculpatory purposes.

The following morning, the State presented the buy report for review, having successfully located it. But upon review, Freeman's counsel noted that in the report, the CI indicated that he purchased the crack from a black male, whom he knew as "Trace." Consequently, defense counsel argued that admitting the report or allowing the officer to testify as to its details would violate Freeman's Confrontation Clause rights. However, the trial court disagreed, stating that defense counsel opened the

11

door for this evidence when he cross-examined the officer about the vague description of the seller contained in the officer's affidavit. The court then indicated that it would instruct the jury that the evidence was not being admitted for the truth of the matter asserted but, rather, to explain the officer's conduct. Maintaining his objection, defense counsel asked the trial court if it thought the evidence was damaging to Freeman, to which the court responded, "[v]ery damaging."

Thereafter, during its redirect examination of the officer, the State introduced the buy report into evidence over Freeman's objection. At that point, the trial court instructed the jury that it could consider the contents of the report "only in the context of the credibility or impeachment or lack of impeachment of this particular witness and for no other purpose." Subsequently, the officer testified that, based on the buy report, the CI claimed to have purchased the crack from a suspect named Trace. And later, despite the trial court's instruction, the State argued during closing that although the cocaine-trafficking charge did not require proof that Freeman sold crack to the CI, "Trace is often a nickname for Tracey." Freeman's counsel lodged yet another objection, which the trial court overruled.

As he did during the trial, Freeman argues on appeal that the CI's statement in the buy report, in which he claimed to have purchased crack cocaine from someone

12

named Trace, was testimonial, and therefore prohibited by the Confrontation Clause. As previously noted, we agree.

Quite simply, a confidential informant's "statements to a law enforcement officer are clearly testimonial"[26] because "[t]ips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial."[27] And the very fact that the informant is confidential—*i.e.*, that his or her identity is not disclosed—"heightens the dangers involved in allowing a declarant to bear testimony without confrontation."[28] Indeed, permitting anonymous accusations of crime without "any opportunity for cross-examination would make a mockery of the Confrontation Clause."[29]

Here, the CI's statement in the buy report and the officer's testimony regarding that statement were clearly testimonial. And although the Confrontation Clause does

---

[26] *United States v. Lopez-Medina*, 596 F3d 716, 730 (II) (A) (1) (10th Cir. 2010); *see United States v. Holmes*, 620 F3d 836, 841 (II) (8th Cir. 2010) (holding that statements made by a CI to officer that led to officer's further investigation of defendant clearly fall within the class of statements considered testimonial); *United States v. Cromer*, 389 F3d 662, 675 (II) (A) (6th Cir. 2004) (same).

[27] *Cromer*, 389 F3d at 675 (II) (A).

[28] *Id.*

[29] *Id.*

13

not bar "the use of testimonial statements for purposes other than establishing the truth of the matter asserted,"[30] contrary to the trial court's ruling and its subsequent instructions to the jury, the crux of the officer's testimony—that the CI claimed to have purchased crack cocaine from a person named "Trace"—"was not offered merely to explain why a government investigation was undertaken or to demonstrate the effect of the out-of-court statements on the officers."[31] Rather, the purpose of this testimony was to establish that the person named "Trace," was involved with the illegal drug activity occurring at the Thoms Drive residence.[32] In fact, the State's argument during closing that "Trace is often a nickname for Tracey" made this exact point and belies any contention that the statement merely provided an explanation for

---

[30] *Crawford*, 541 U.S. at 59 (IV) n. 9.

[31] *Cromer*, 389 F3d at 676 (II) (A).

[32] *See Holmes*, 620 F3d at 840-42 (II) (holding that statements of non-testifying CI that "Carlo," which was defendant's nickname, sold crack cocaine from particular residence went beyond providing background or propriety of police investigation but, rather, was offered to establish truth that defendant was a drug dealer); *Cromer*, 389 F3d at 676-77 (II) (A) (holding that officer's testimony that CI's statement implicating a person nicknamed "Nut," which was linked to defendant, was offered to prove the truth that defendant was involved in the sale of illegal narcotics).

14

the lead officer's conduct.[33] Moreover, Freeman had no opportunity to cross-examine the CI. Accordingly, the buy report and the officer's testimony concerning its details clearly violated Freeman's Sixth Amendment Confrontation Clause rights.[34]

Furthermore, we disagree with the trial court's assertion that Freeman opened the door to the admission of this evidence during his aggressive cross-examination of the lead officer as to why Freeman was targeted when there were at least four other people at the residence at the time the search warrant was executed. Defense counsel's decision to waive a defendant's confrontation rights must be done "intentionally and for valid, tactical purposes in order to satisfy the requirement that

---

[33] *See Cromer*, 389 F3d at 676-77 (II) (A) (noting that argument that CI's statement was only offered to explain officer's conduct was undermined by prosecution's demonstration that name provided by CI was defendant's nickname).

[34] *See Holmes*, 620 F3d at 840-42 (II) (holding that statements of non-testifying CI was offered to establish truth that defendant was a drug dealer, was not subject to cross-examination, and, thus, violated defendant's Confrontation Clause rights); *Cromer*, 389 F3d at 676-77 (II) (A) (same); *see also Kimble v. State*, 301 Ga. App. 237, 250 (7) (e) (687 SE2d 242) (2009) (holding that defense counsel performed deficiently, albeit with no prejudice resulting, by failing to object on Confrontation Clause grounds to officer's testimony that informant implicated co-defendant as source of drugs); *Cf. Little v. State*, 280 Ga. App. 60, 63-64 (2) (633 SE2d 403) (2006) (holding that there was no Confrontation Clause violation when officer's testimony did not actually repeat any out-of-court statement by CI and only provided explanation for officer's conduct in approaching defendant's vehicle).

15

the waiver of a constitutional right must be clear and intentional."[35] But here, there was no such waiver. In fact, the record shows that Freeman's counsel explicitly objected to the admission of the CI's statements, as well as the trial court's ruling that he opened the door to such statements. And although courts at times allow "the use of otherwise inadmissible evidence, including hearsay statements, to clarify, rebut, or complete an issue opened up by defense counsel on cross-examination,"[36] as the Supreme Court of the United States has explained, "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence . . . ."[37] Thus, the trial court erred in ruling that Freeman opened the door to the CI's statement.[38]

---

[35] *Holmes*, 620 F3d at 843.

[36] *United States v. Jumping Eagle*, 515 F3d 794, 801 (II) (B) (8th Cir. 2008) (punctuation omitted).

[37] *Crawford*, 541 U.S. at 61 (V) (A).

[38] *See Holmes*, 620 F3d at 844 (holding that defendant did not waive his Confrontation Clause rights so as to allow admission of CI's statements even though defense counsel opened the door by asking officer questions on cross-examination in attempt to give jury the impression that officer had no information tying defendant to house where drugs were sold); *Cromer*, 389 F3d at 678-79 (II) (A) (same); *see also Goins v. State*, 259 Ga. App. 739, 740-41 (2) (578 SE2d 308) (2003) (holding that defendant's cross-examination of detective did not open door to non-testifying co-defendant's incriminating statements that violated Confrontation Clause).

Finally, while admitting evidence in violation of a defendant's Confrontation Clause rights "is one of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming."[39] But here, the State cannot meet that burden. The CI's statement that he purchased crack cocaine from "Trace" was arguably the *only* direct or non-circumstantial evidence that Freeman was involved in the illegal drug activity occurring at the Thoms Drive residence. Thus, the statement was not merely cumulative of other sufficient evidence.[40]

Nor can we characterize the remaining evidence against Freeman as overwhelming so as to satisfy us that the CI's statement did not contribute to the

[39] *Miller v. State*, 289 Ga. 854, 857 (2) (717 SE2d 179) (punctuation omitted).

[40] *See id.* at 858 (2) (a) (noting that "[t]he true test as to whether evidence is cumulative depends not only on whether it tends to establish the same fact, but it may depend on whether the new evidence is of the same or different grade." (punctuation omitted)); *Gifford v. State*, 287 Ga. App. 725, 726-27 (1) (652 SE2d 610) (2007) (holding non-testifying witness's statement violated the Confrontation Clause and was not merely cumulative as it was the only direct evidence that defendant was involved in the robbery); *Senior v. State*, 273 Ga. App. 383, 385 (1) (615 SE2d 220) (2005) (holding that trial court's erroneous admission of testimonial hearsay consisting of witness's written statement linking defendant to the burning of victim's car was not harmless because testimony went to the core of State's case and was not entirely cumulative of other testimony).

17

jury's verdict. Although there was some evidence that Freeman resided at the Thoms Drive residence, Freeman and six other witnesses testified that he lived elsewhere and only went to that house to use the computer. In addition, while the 50 grams of crack cocaine were found in the same bedroom where Freeman was located at the time the officers executed the search warrant, the drugs were not found on his person but were instead hidden in a floor vent. Moreover, there was at least some evidence that four of Freeman's uncles lived at the residence and, therefore, also would have had access to the cocaine. In fact, two of Freeman's uncles specifically testified that the drugs belonged to a local dealer, who would store the drugs there, and in return would provide cocaine for one of the uncles. Given these circumstances, we simply cannot conclude that there is no reasonable probability the CI's statement that he purchased crack cocaine from "Trace" did not contribute to the jury's guilty verdict. To the contrary, we agree with the trial court's rather candid acknowledgment that the evidence was, in fact, "very damaging." Accordingly, this Confrontation Clause violation was not harmless, and Freeman is entitled to a new trial.[41]

---

[41] *See Cromer*, 389 F3d at 679 (II) (A) (holding that the admission of the CI's statements directly tying defendant to the illegal drug activity likely impacted the trial and, therefore, was not harmless error); *Miller*, 289 Ga. at 858 (2) (a) (holding that error in admitting testimony that violated the defendant's Confrontation Clause rights was not harmless given that the properly admitted evidence was not overwhelming);

For all of the foregoing reasons, we reverse Freeman's convictions. Nevertheless, the State may retry Freeman without violating the Fifth Amendment prohibition against double jeopardy[42] because, as we held in Division 1, *supra*, even without the CI's statement, the evidence at trial was sufficient to support the convictions.[43]

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Miller, J., concur*.

---

*Gifford*, 287 Ga. App. at 726-27 (1) (same); *Senior*, 273 Ga. App. at 385 (1) (same).

[42] *See* U.S. Const. amend. V (". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Ga Const. art. 1, § 1, ¶ XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").

[43] *See Thompson v. State*, 313 Ga. App. 844, 849 (1) (723 SE2d 85) (2012) (permitting retrial when sufficient evidence existed, despite reversing conviction on other ground).