**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 20, 2015**

# In the Court of Appeals of Georgia

A13A1386. ROBINSON v. THE STATE.

BRANCH, Judge.

In an unpublished decision issued on November 7, 2013, this Court held that the evidence was sufficient to sustain Carlos Robinson's conviction for trafficking in cocaine and that Robinson had not received ineffective assistance of counsel. On April 22, 2014, the Supreme Court of Georgia granted Robinson's petition for certiorari, vacated our judgment, and remanded the case to this Court for reconsideration in light of the Supreme Court's decision in *Scott v. State*, 295 Ga. 39 (757 SE2d 106) (2014). In that decision, the Supreme Court held that the former version of Georgia's cocaine trafficking statute, OCGA § 16-13-31 (a), "required proof that the defendant had knowledge of the weight of the cocaine" at issue. Id. at 42 (3) (footnote omitted). The Supreme Court also noted that the issue facing this

Court on remand was "whether the evidence at trial was sufficient to prove beyond a reasonable doubt that [the defendant] knew that the cocaine he possessed weighed 28 grams or more." Id. at 42 (3), n.5. On remand, we conclude that this jury was authorized to infer from the evidence presented that Robinson knew that the cocaine he possessed weighed 28 grams or more. We therefore affirm Robinson's conviction.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

> We stated the relevant facts in our unpublished opinion as follows:
>
> Construed in favor of the verdict, the evidence shows that on December 10, 2007, Robinson was driving on Highway 19/41 in Henry County with co-defendant Cedric Holland, who was seated in the passenger seat. As they drove past the Atlanta Motor Speedway, Locust Grove Police Officer Jason Sanders noticed that Robinson's car was moving at an abnormally slow speed. Sanders also noticed that the tint of the car's

2

windows appeared darker than legally permitted and that the expiration sticker on the vehicle's tag was obstructed from view. Based on these observations, Sanders initiated a traffic stop.

Sanders approached the stopped car and obtained Robinson's identification. As Robinson handed Sanders his driver's license, Sanders observed that Robinson's hands were shaking and that his carotid artery was visibly pulsating. Sanders then directed Robinson to step out of the vehicle, and Robinson complied. While Robinson stood behind the vehicle, Sanders asked Robinson where he was coming from and where he was going. Robinson answered that he was leaving a friend's house in Atlanta and that he and Holland were on their way to Robinson's house in Griffin. At this point, Sanders left Robinson standing at the rear of the car and approached Holland, who was still seated in the vehicle. When Sanders asked Holland the same questions he previously asked Robinson, Holland responded that they were coming from work in Atlanta and that they were on their way to Holland's father's house in Griffin. Sanders then asked for and obtained Holland's driver's license and contacted dispatch to run a Georgia Crime Information Center (GCIC) check on both men's licenses.

While waiting for dispatch to reply, Sanders noticed Robinson trying to walk toward the passenger side of the vehicle and asked him several times to remain standing at the rear of the vehicle. Sanders also saw that Holland was making furtive movements inside the vehicle, as if he were hiding something underneath the seat. Based upon these actions, Sanders asked Robinson for consent to search the vehicle. He inquired

3

whether Robinson had any weapons, large sums of U. S. currency, or any illegal narcotics inside the car. Robinson denied the presence of any of these items and gave Sanders verbal consent to search the vehicle.

Sanders did not immediately proceed to search the car, however, because he was still waiting for a response from dispatch and for a backup unit to arrive. Instead, Sanders walked back to his patrol car to retrieve an item. As he did so, Sanders saw Holland jump from the passenger side to the driver's side of the vehicle and speed away. Sanders quickly handcuffed Robinson, turned him over to the back-up unit that had just arrived, and got in his patrol car to pursue Holland, who was ultimately apprehended. During the chase, Sanders observed Holland throw a black package and then a clear bag out of the passenger side window. Holland then lost control of the car and slammed into a telephone pole. He fled the vehicle on foot before being caught and arrested. Sanders later searched the car and found several plastic bags and a set of digital scales in the passenger floor board. Although police did not locate the black package, the clear bag was recovered and was later determined to contain 249.21 grams of approximately 65% pure cocaine.

Robinson and Holland were both arrested on narcotics charges and transported to the police station with the assistance of another officer named Chad Rosborough, who had been called to the scene. Once they arrived at the police department, Rosborough read Robinson his Miranda rights. At that time, Rosborough asked Robinson about his education and determined that Robinson had completed the tenth grade.

4

The officer further noted that Robinson did not appear to be under the influence of any medication or other substance and appeared to understand the questions fully. Though Robinson did not ask for a lawyer, he refused to sign the Miranda waiver form, at which point Rosborough stopped talking to Robinson.

Shortly afterward, while completing paperwork, Rosborough heard Robinson say that he "had f***ked up." Sanders then came into contact again with Robinson and escorted him out of the Hampton police department to a patrol vehicle in order to transport him to the Henry County jail. While exiting the door of the station, Robinson shook his head and stated that he had "messed up." Sanders stopped and looked at Robinson, who volunteered that he "knew he shouldn't have went and picked up the drugs." There was no evidence that Sanders did anything to elicit these statements. . . .

Robinson and Holland went to trial on a charge of cocaine trafficking.[1] After the State rested, Holland entered a plea of guilty. Holland then took the stand as a witness for Robinson, testifying that on the day in question, he called Robinson, who was a lifelong friend, and asked him to come to Atlanta and drive him to Griffin. Holland stated that when Robinson picked him up, Holland already had the cocaine, scales, and bags with him and that he did not tell Robinson about the drugs. On cross-examination, Holland admitted that he and Robinson

---

[1] The indictment charged both men with unlawful and knowing possession of "more than 200 grams of a mixture containing at least 10% cocaine."

gave inconsistent answers when asked by police about their destination. Holland also testified that even though he knew Robinson was from Griffin, Robinson "happened" to be in Atlanta at precisely the time Holland needed him to be.

*Robinson v. State*, Case No. A13A1386 (decided November 7, 2013), pp. 2-7. The jury found Robinson guilty of trafficking in cocaine, and he was convicted. Robinson timely filed a motion for new trial, which was denied. Id. at 7.

Our Supreme Court has instructed us to reconsider Robinson's contention that the evidence was insufficient to support his conviction in light of *Scott*, which held that under former OCGA § 16-13-31 (a), the State must prove both a defendant's "knowledge of the nature and amount of [the cocaine at issue] and [knowledge] of being in possession of it." Id. at 40 (1). Specifically, Robinson argues that proof of Robinson's mere spatial proximity to the cocaine Holland threw out of the car after he drove it away from the traffic stop was insufficient to show that Robinson knowingly possessed at least 28 grams of the cocaine. We disagree.

6

Former OCGA § 16-13-31 (a) (1),[2] which was in effect during Robinson's October 2008 trial, provided in relevant part:

> Any person who *knowingly* sells, manufactures, delivers, or brings into this state or who is *knowingly* in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . in violation of this article commits the felony offense of trafficking in cocaine[.]

(Emphasis supplied.) According to our Supreme Court, "[t]he plain language of [former] OCGA § 16-13-31 (a) (1) . . . dictates the conclusion that knowledge of the quantity of the drug was an element of the crime." *Scott*, 295 Ga. at 40 (1). The statute "contains express scienter requirements, that is, knowledge of the nature and amount of the drug and of being in possession of it." Id. The question before us is thus whether the State proved that Robinson had knowing possession of at least 28 grams of cocaine, thereby satisfying the intent requirement of the former statute. Id. at 42 (3).

As to possession of the drug, undisputed evidence that Robinson was driving the car in which the cocaine was transported (and from which it was thrown) gave rise

_____

[2] As our Supreme Court noted in *Scott*, the statute was amended in 2013 to delete the adverb "knowingly" throughout subsection (a). *Scott*, 295 Ga. at 41 (2).

7

to a rebuttable presumption that he had possession and control over the drug. *Ramirez v. State*, 290 Ga. App. 3, 4 (1) (658 SE2d 790) (2008). It is true that this presumption "may be rebutted if the driver presents evidence that other persons had equal access to the vehicle and contraband." Id. (citation omitted). But in cases where, as here, the driver and a passenger are both charged with joint constructive possession of contraband transported in a vehicle, "the state may rely on the presumption to show that the driver exercised possession and control over the contraband, but the driver is not entitled to rely on the equal access rule to rebut the presumption." Id. at 5 (1) (citation, punctuation and footnote omitted). Robinson's citation of the equal access rule is thus unavailing to rebut the presumption that as the driver of the car, he was in possession of and exerted control over that drug.

As to whether Robinson knew that the cocaine at issue weighed 28 grams or more, this Court has often observed that "'[c]riminal intent rarely can be proved by direct evidence, but its existence may be inferred by the trier of fact upon consideration of the words, conduct, demeanor, motive, and *all other circumstances connected with the act* for which the accused is prosecuted.'" *McKibbons v. State*, 226 Ga. App. 452, 453 (1) (486 SE2d 679) (1997) (emphasis added), quoting *Peterson v. State*, 204 Ga. App. 532, 533 (1) (419 SE2d 757) (1992). In *Freeman v.*

*State*, 329 Ga. App. 429 (765 SE2d 631) (2014), for example, the first case decided and published by this Court in the wake of *Scott*, cocaine in an amount "*two times* the trafficking threshold weight of 28 grams" was found "hidden in a vent in a bedroom that [defendant] was apparently occupying." Id. at 432 (1) (emphasis in original). We thus concluded that this evidence, along with that of five similar transactions, was sufficient to show that the defendant "had knowledge of the weight of the cocaine found" in the search of the home. Id. at 433 (1).

Although the record before us shows that similar transactions were introduced only at Robinson's sentencing, the circumstances of the possession for which Robinson was prosecuted include Robinson's status as the driver of the car; the presence of a very large quantity of narcotics in the passenger compartment of the car; his display of nervousness during the stop; his and Holland's inconsistent statements as to where they were going; the scales found on the passenger floorboard of the car; Robinson's spontaneous admissions that he "f***ked up," "messed up," and "knew" that he "shouldn't have went and picked up the drugs"; and the cocaine's weight of approximately 250 grams, or nearly *ten times* the minimum amount required to sustain a conviction for trafficking in the drug. The record also shows that the jury was read the indictment, which charged Robinson with knowing possession of "more

9

than 200 grams" of the drug, and was charged accordingly that "any person who is knowingly in possession of 200 grams or more" of cocaine "with a purity of 10% or more" commits the offense of cocaine trafficking.[3]

This indictment squarely presented the jury with the question whether Robinson was in knowing possession of an amount of cocaine far in excess of the statutory amount. The circumstances surrounding his arrest also authorized the jury to infer not only that Robinson had knowing possession of the cocaine transported in the car he was driving, but also that he knew that cocaine to weigh 28 grams or more. As such, the evidence was sufficient to sustain Robinson's conviction for trafficking in cocaine under the former version of OCGA § 16-13-31 (a) (1). See *Freeman*, 329 Ga. App. at 433 (1) (evidence was sufficient to prove defendant's knowing possession of cocaine under the former version of OCGA § 16-13-31 (a) (1)).

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur in judgment only.*

---

[3] Robinson has not asserted any error concerning the jury charge.