**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1313. BROWN v. THE STATE.                    JE-047C

ELLINGTON, Presiding Judge.

Richard Evan Brown was found guilty by a DeKalb County jury of trafficking over 400 grams of a mixture containing methamphetamine, OCGA § 16-13-31 (e) (3). On appeal, Brown contends that the State presented insufficient evidence of his guilt. More specifically, Brown argues that the State failed to prove that he knew he was in possession of a trafficking weight of methamphetamine. For the reasons set forth below, we disagree and affirm.

The standard for reviewing the sufficiency of the evidence

is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light

most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). Further, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

So viewed, the evidence shows that on the morning of June 22, 2012, Brown and his co-defendant, Jesse Ray Scheidal, were traveling in a Nissan Maxima on Highway 78 in DeKalb County. Brown had borrowed the car from a friend the night before. The car veered off the highway without slowing down, rolled over several times, and came to rest upside down. A witness identified Scheidal as the driver, although Brown later told police that he had been driving. Brown and Scheidal refused medical treatment at the scene.

After seeing the accident, a witness turned around and came back to the wrecked car. When he arrived at the scene, Scheidal had already exited the Maxima, and the witness helped pull Brown out of the passenger's side of the car. After Brown and Scheidal went to the guard rail, the witness overheard Scheidal tell Brown that Brown was driving the car. Brown went back to the Maxima and returned with a cell

2

phone. When the police arrived, the witness reported that Scheidal and Brown were "acting strange," with one standing by the side of the road and the other "just wandering around." A second witness described Brown as was walking with his head down near the wrecked car "looking for something on the ground." Against the advice of the witness, Brown also re-entered the overturned and still smoking vehicle.

After firefighters arrived at the scene they searched the debris field to make sure that no one had been ejected from the car. They could discern the car's "direction of travel" as there were pieces of the guard rail on the ground, pointing toward the wood line. Near the wood line, they found a black box "in line with the debris field," and between 75 and 100 feet from the Maxima. A firefighter recognized the box as a "pelican" box, a watertight box that absorbs shock and which the fire department uses to carry its cardiac drugs. Attached to the bottom of the box were two "doughnut magnets," which the firefighter had not seen on that type of box. The box contained 433 grams of crystal methamphetamine.

Police, with the help of a canine unit, searched the Maxima but found no drugs or drug-related paraphernalia in the car or on Brown's person. The owner of the Maxima testified that the box was not attached to her vehicle when she loaned her car to Brown, and that the drugs in the box did not belong to her.

3

The State also introduced similar transaction evidence, which was admitted to show knowledge and intent. Following the accident, Brown was arrested on October 4, 2012 in Gwinnett County for possession of marijuana and 8 grams of methamphetamine. At the time of the arrest, Brown had recently left Scheidal's residence driving a borrowed car. Brown told one officer that he had gotten the drugs from Scheidal's residence, and he told the arresting officer that "he no longer uses drugs; he just delivers them."

On October 21, 2012, persons, not including Brown, were pulled over by police after they drove away from Scheidal's residence in a Ford Mustang. Police found a black box with magnets underneath the rear bumper of the car. Methamphetamine and marijuana were in the box. After obtaining a search warrant, officers found 167 grams of methamphetamine, marijuana, sandwich bags, and a digital scale in Scheidal's residence.

Brown and Scheidal were indicted in this case for trafficking methamphetamine in violation of former OCGA § 16-13-31 (e) in that, on or about June 22, 2012, they "did knowingly possess 400 grams or more of a mixture containing methamphetamine." As a preliminary issue, Brown argues that the State was required to prove that he knew the methamphetamine was 28 grams or more. The State

4

disagrees. Former OCGA § 16-13-31 (e),[1] applicable here, provided that "[a]ny person who knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine . . . or any mixture containing . . . methamphetamine"[2] commits the offense of trafficking in methamphetamine. This provision is substantially analogous to the former cocaine trafficking statute, OCGA

---

[1] OCGA § 16-13-31 (e) (2012) provided:
(e) Any person who knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine or amphetamine and, upon conviction thereof, shall be punished as follows: (1) If the quantity of methamphetamine, amphetamine, or a mixture containing either substance involved is 28 grams or more, but less than 200 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of ten years and shall pay a fine of $200,000.00; (2) If the quantity of methamphetamine, amphetamine, or a mixture containing either substance involved is 200 grams or more, but less than 400 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of 15 years and shall pay a fine of $300,000.00; and (3) If the quantity of methamphetamine, amphetamine, or a mixture containing either substance involved is 400 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $1 million.

[2] Effective July 1, 2013, OCGA § 16-13-31 (e), and the other provisions of OCGA § 16-13-31, were amended to delete "knowingly" throughout the Code section. Ga. L. 2013, p. 222, §§ 4, 21. See *Summerville v. State*, 332 Ga. App. 617, 619 (1) n. 1 (774 SE2d 190) (2015).

5

§ 16-13-31 (a) (1), which the Supreme Court of Georgia has held includes knowledge of the quantity of the drug as an element of the crime. See *Scott v. State*, 295 Ga. 39, 40 (1) (757 SE2d 106) (2014). The State argues that the former cocaine trafficking statute and the former methamphetamine trafficking statute nevertheless differ in that former cocaine trafficking statute provided, in relevant part, that "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or who is *knowingly* in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine," commits the offense of trafficking in cocaine. (Emphasis supplied.) OCGA § 16-13-31 (a) (1) (2012). Because former OCGA § 16-13-31 (e) does not contain a second "knowingly," the State maintains, the legislature intended to treat trafficking in cocaine differently from trafficking in methamphetamine. Rather, the State contends, former OCGA § 16-13-31 (e) requires that a defendant need only be in knowing possession of methamphetamine.

In its argument, the State pointed out that *Scott* had not then been applied to former OCGA § 16-13-31 (b), (c), or (e). However, following the submission of the State's appellate brief, this Court, in *Summerville v. State*, 332 Ga. App. 617, 619 (1) (774 SE2d 190) (2015), held "that the reasoning of *Scott* applies to the former marijuana trafficking provision," and concluded that former OCGA § 16-13-31 (c)

6

required that the State prove the appellant knowingly possessed more than ten pounds of marijuana. The Supreme Court of Georgia has implied that it would reach the same conclusion. See *Wilson v. State*, 291 Ga. 458, 459 (729 SE2d 364) (2012) ("[W]e believe that Appellant's argument that OCGA § 16-13-31 (c) requires proof that he knew the amount of the marijuana he possessed may be meritorious[.]"). As former OCGA § 16-13-31 (c) and former OCGA § 16-13-31 (e) are the same to the extent that "a person who knowingly . . . brings into this state or has possession of" the designated amount of contraband commits the offense of trafficking, our finding in *Summerville* that *Scott* applies to former OCGA § 16-13-31 (c) logically extends to former OCGA § 16-31-31 (e). Nor, given the Supreme Court's analysis in *Wilson* and *Scott*, do the State's arguments show that *Summerville* was wrongly decided. Accordingly, we agree with Brown that the State was required to show, as an element of the crime of trafficking in methamphetamine, that Brown knew that the weight of the contraband was at least 28 grams or more.

Notwithstanding that we agree with Brown as to the requirements of former OCGA § 16-13-31 (e), we disagree that the evidence was insufficient to establish that he was guilty beyond a reasonable doubt of trafficking in methamphetamine. Knowledge and possession, as any other fact, may be shown by circumstantial

7

evidence. *Freeman v. State*, 329 Ga. App. 429, 432 (1) (765 SE2d 631) (2014). A jury may consider "the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Punctuation and footnote omitted.) Id. Given the presence of the box in the debris field of the wreck, a trier of fact could conclude that the box had been in or attached to the Maxima. The jury could also conclude that Brown knew about the box and was searching for it after the accident. Although he had been involved in a serious accident, Brown was seen walking around the wrecked car looking for something on the ground. An officer also noted that, before he was detained, Brown appeared nervous. Brown also acknowledged to an officer in his later arrest for possession of methamphetamine that he delivers drugs.

Brown argues that evidence nevertheless does not show that he knew how much contraband was in the box. It is a reasonable possibility, Brown contends, that he had simply agreed to provide transportation for Scheidal, but that "he was not so nosy as to demand the details," or that Brown knew that the box contained drugs but did not know the weight of the contraband. However, to support a conviction on circumstantial evidence, the proved facts need exclude only reasonable hypotheses. *Jackson v. State,* 284 Ga. App. 619, 620 (1) (644 SE2d 491) (2007). "And questions

8

of reasonableness are generally decided by the jury." (Citation and punctuation omitted) Id. In this case, in light of the totality of the evidence, including Brown's behavior at the scene of the wreck, the jury could conclude that it was not a reasonable hypothesis that Brown did not have personal knowledge of the contents of the box. And because the amount of methamphetamine was over 15 times the threshold trafficking amount, and in light of the similar transaction evidence from which a trier of fact could infer Brown's knowledge of the drug trade, the evidence was sufficient to establish beyond a reasonable doubt that Brown knew that he possessed 28 grams or more of a mixture containing methamphetamine. See *Summerville v. State*, 332 Ga. App. at 620 (1) (that marijuana found in the defendant's car was more than twice the amount required to constitute trafficking was among evidence sufficient to show that defendant knowingly possessed more than the trafficking amount); *Robinson v. State*, 331 Ga. App. 872, 877-878 (772 SE2d 223) (2015) (evidence sufficient to show defendant's knowledge of trafficking weight of cocaine where, among other things, the cocaine weighed nearly ten times the trafficking threshold amount) (physical precedent only); *Freeman v. State*, 329 Ga. App. at 432 (1) (evidence sufficient to support trafficking conviction where cocaine weighed 50.62 grams, and State submitted evidence of five similar transactions).

9

Compare *Childs v. State*, 330 Ga. App. 727, 730-731 (1) (769 SE2d 147) (2015) (evidence insufficient to show defendant's knowledge of trafficking weight of cocaine where the quantity was just in excess of 28 grams and there was no evidence that defendant had scales or other items used to measure, weigh or package contraband). Accordingly, Brown's conviction for trafficking in methamphetamine must be affirmed.

*Judgment affirmed. McFadden, J., concurs, and Dillard, J., concurs in judgment only.*

A15A1313. BROWN v. THE STATE.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case sub judice and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).