**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 28, 2016**

# In the Court of Appeals of Georgia

A16A1177. MCCANTS v. THE STATE.

RAY, Judge.

A jury convicted Earl McCants of trafficking in cocaine (OCGA § 16-13-31 (c)) and possession of a firearm during the commission of a felony (OCGA § 16-11-106).[1] He appeals from the denial of his amended motion for new trial contending that the evidence was insufficient to prove beyond a reasonable doubt that he knowingly possessed more than 400 grams of cocaine.[2] For the reasons that follow, we affirm.

---

[1] This Court affirmed the cocaine trafficking conviction of McCants' co-defendant, Trevis Harpe, in an unreported opinion. *Harpe v. State*, 330 Ga. App. XXVI (Case No. A14A2300, decided on February 19, 2015).

[2] McCants does not challenge his conviction for possession of a firearm during the commission of a felony.

Reviewing the evidence under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the record reflects that on March 26, 2011, at about 1:30 a.m., a police officer pulled over a Ford Expedition that was swerving in its lane. McCants owned the Expedition,[3] but when the vehicle was stopped, he was sitting in the front passenger seat and his friend, Trevis Harpe, was driving. Harpe's hands shook badly when he handed his license to the officer, and the officer smelled burnt marijuana and Blunt Power air freshener as he interacted with Harpe and McCants. McCants acted oddly, thumbing through his wallet several times, touching the same piece of paper multiple times, before eventually giving the officer an "older insurance card" for the vehicle. Harpe continued to display nervous behavior as the officer was writing a traffic citation, repeatedly saying, "I know nothing." The officer placed Harpe at the front of the vehicle and spoke to McCants, whom the officer testified was "extremely intoxicated."

The officer asked McCants to step out of the vehicle and patted him down for weapons. The officer then searched the vehicle. He found a handgun between the front passenger seat and the center console, as well as ammunition. McCants admitted

---

[3] Although both parties' briefs state that McCants's wife owned the Expedition, the record indicates that McCants himself owned the vehicle.

that the gun was his, but told the officer that he did not think he needed to mention it because it was registered.

The officer also found a backpack containing a "brick-sized object" wrapped in multiple layers of cellophane packaging that had been slit open, revealing a white, powdery substance. The backpack was under the passenger seat where McCants had been sitting. Later testing showed that the substance was cocaine weighing 987.98 grams and with a purity of 42.3 percent. The officer testified that, in his experience, this type of slit in the cocaine's packaging indicated that the drug had been observed or tested prior to sale. The officer testified that the street value of this cocaine could range from about $30,000, if the approximately kilo-sized brick were sold whole, to more than $98,000 if it were cut up and sold in smaller portions for about $100 a gram.

The officer also found a large amount of cash on McCants and Harpe. McCants had $4,000 rubber-banded into $1,000 increments in one pocket and $367 in his other pocket. A narcotics agent testified that banding money into $1,000 increments is a common practice among drug dealers and that McCants told him he earned about $8.50 an hour. McCants testified that he made $18 an hour. The officer also found $1,587 on Harpe.

McCants and Harpe were tried jointly. At trial, McCants testified that Harpe, whom he knew from school, had borrowed his Expedition to go to a strip club in Atlanta and that McCants rode along. McCants testified that he and Harpe left for Atlanta about 6:30 p.m., and that the drive there from his home in Bonaire took about 1½ hours. He testified that they picked up Harpe's cousin, who got in the backseat of the Expedition with a black backpack and a shoe box. McCants testified that he had never seen, handled, or looked inside the backpack.

The testimony of McCants, Harpe, and Harpe's cousin, Elzie Fulks, differed as to which strip club they had visited and how they got there. Harpe denied riding to the club in McCants's vehicle, and Fulks testified that he does not know McCants and that he never got into the Expedition or placed the backpack inside it. Harpe testified that he saw McCants at the club and agreed to drive him home because he needed a ride and McCants was intoxicated. Harpe denied any knowledge of the backpack and said Fulks was never in the Expedition's backseat.

McCants testified that he was carrying about $4,400 in cash because he had planned to buy rims at a shop in Atlanta for another vehicle he owned. However, he testified that he did not buy the rims because they were separated from the tires and would not fit in the Expedition.

4

The jury found McCants guilty, and he appeals. His sole enumeration of error is that there was insufficient evidence to convict him of trafficking as charged in the indictment. The indictment charged him, inter alia, with knowing possession of more than 400 grams of cocaine. McCants argues only that the State failed to prove that he *knowingly* possessed the amount indicated.

The applicable version of OCGA § 16-13-31 (a) (1) states,[4]

> Any person who . . . is *knowingly* in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine and, upon conviction thereof, shall be punished as follows: . . . (C) If the quantity of . . . the mixture involved is 400 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $1 million.

(Emphasis supplied.) OCGA § 16-13-31 (a) (1). Our Supreme Court, in *Scott v. State*, 295 Ga. 39, 40 (1) (757 SE2d 106) (2014), determined that the version of OCGA § 16-13-31 (a) (1) applicable here "contains express scienter requirements, that is, knowledge of the nature and amount of the drug and of being in possession of it." Given that "'knowledge' is made part of the offense, the State has the burden of

---

[4] The current, amended, version of OCGA § 16-13-31 omits the word "knowingly," but as the amendment became effective July 1, 2013, it does not apply to McCants's case as the underlying offense occurred in 2011. See Laws Act 2013, Act 84, § 4.

5

proving the defendant's guilty knowledge." (Citation omitted.) Id. Even so, the jury could "find criminal intention, i.e., knowledge, upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Indeed, both knowledge and possession may be proved, like any other fact, by circumstantial evidence." (Punctuation and footnotes omitted.) *Freeman v. State*, 329 Ga. App. 429, 432 (1) (765 SE2d 631) (2014).

> When a conviction is based solely on circumstantial evidence, like the convictions in this case, the circumstantial evidence must not only be consistent with the hypothesis of guilt, but must also exclude every other reasonable hypothesis save that of the guilt of the accused. But not every hypothesis is a reasonable one; the evidence need not exclude every conceivable inference or hypothesis – only those that are reasonable.

(Citations and punctuation omitted.) *Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012). The jury determines whether an alternate hypothesis offered by the defendant is reasonable*,* and this Court will only disturb a jury's finding if it cannot be supported as a matter of law. Id.

The facts, as outlined above, authorized the jury to find that McCants was at least in joint constructive possession of the cocaine. McCants was the owner of the vehicle, but he was not driving it.

6

Under Georgia law, the owner of an automobile is presumed to be in possession and control of any contraband found in the automobile, but this presumption is rebuttable by evidence of equal access to the contraband by others. However, the equal access rule, conceptually and historically, has no application where, as here, all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband. Possession may be joint or exclusive, and actual or constructive. Joint constructive possession with another will sustain a conviction for possession of contraband.

(Citations and punctuation omitted.) *Jackson v. State*, 314 Ga. App. 272, 274 (1) (a) (724 SE2d 9) (2012). Here, the evidence circumstantially shows that McCants and Harpe had equal access to the cocaine and had joint constructive possession of it. The cocaine was in a package that had been opened and stored directly under McCants's seat. Both the drug and the hidden gun were within McCants's reach. He was carrying a large amount of cash banded into $1,000 increments, and a narcotics agent testified that this was consistent with how drug dealers divide their money. McCants also displayed odd behavior when stopped by the officer, including repeatedly thumbing through his wallet. McCants, Harpe, and Fulks offered inconsistent explanations about where they had been and who had ridden in the Expedition. Taken together, the jury was authorized to conclude that these facts exceed mere spatial proximity to the

7

drug and exclude every other reasonable hypothesis other than McCants's guilt. *Blevins*, supra. See *Taylor v. State*, 263 Ga. App. 420, 422 (1) (587 SE2d 791) (2003) (jury authorized to believe handgun found in defendant's car was there to protect illegal cocaine cargo). "As long as there is slight evidence of access, power, and intention to exercise control or dominion over the contraband, the question of fact regarding constructive possession remains within the domain of the trier of fact." (Citation and punctuation omitted.) *Sabb v. State*, 317 Ga. App. 537, 540 (731 SE2d 399) (2012).

The evidence also supports the jury's inference that McCants knew the cocaine he was transporting weighed in excess of the 400 grams mentioned in the indictment, given the relatively short turnaround time on his trip between Bonaire and Atlanta, the fact that he had a concealed gun and ammunition, and the fact that the cocaine package stored under his seat had been opened, which the narcotics officer testified meant that the drugs had been looked at or tested. At 987.98 grams, the cocaine weighed more than twice the 400 grams charged in the indictment, and was in excess of 35 times the weight of the statutory 28-gram threshold for a trafficking offense, and its purity was well in excess of that listed in the indictment or the statute. See *Anderson v. State*, __ Ga. App. __ *1, *4-*5 (5) (Case No. A16A0595, decided July

8

14, 2016) (among other things, large amount of cocaine, defendant acting oddly, inconsistent stories, and short turnaround time on trip sufficient to support knowledge of trafficking amount); *Summerville v. State*, 332 Ga. App. 617, 618, 620 (1) (774 SE2d 190) (2015) (among other things, large amount of cash and marijuana well over trafficking amount sufficient to show knowledge); *Robinson v. State*, 331 Ga. App. 872, 877 (772 SE2d 223) (2015) (defendant and co-defendant's inconsistent statements and possession of drugs nearly 10 times the trafficking amount, among other things, sufficient to show knowledge of trafficking amount) (physical precedent only). Compare *Childs v. State*, 330 Ga. App. 727, 730-731 (1) (769 SE2d 147) (2015) (evidence insufficient to show knowledge of trafficking amount where cocaine found was only slightly higher than trafficking amount and there was no evidence to show defendant had weighed cocaine or was familiar with trafficking amounts). The large amount of cash McCants was carrying, divided into thousand-dollar increments as is common practice among drug dealers, also was circumstantial evidence of trafficking. See generally *Mordica v. State*, 319 Ga. App. 149, 154 (1) (b) (736 SE2d 153) (2012).

Viewing the evidence in favor of the jury's verdict under the standard set forth in *Jackson v. Virginia*, supra, and given that the jury was properly charged as to the

9

knowledge element of the trafficking offense as alleged in the indictment, we find that the jury was authorized to determine that sufficient evidence supported McCants's trafficking conviction.

*Judgment affirmed. Doyle, C. J., and Andrews, P. J., concur.*