23444. SAMSELL v. THE STATE.

SUBMITTED MAY 9, 1966—DECIDED MAY 26, 1966— REHEARING DENIED JUNE 9, 1966.

*J. Donald Bennett,* for appellant.

*Earl B. Self, Solicitor General, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Assistant Attorney General,* for appellee.

MOBLEY, Justice. The defendant, Tommy Samsell, was indicted and tried at the August, 1965, term of Walker Superior Court for the murder of Newborn Bolt by shooting him with a shotgun. The defendant was found guilty of murder with recommendation of mercy and was sentenced to life imprisonment. The defendant filed a motion for new trial on the general grounds only, which was overruled by the trial judge. The appeal is from that judgment. He enumerates as error the overruling of his motion for new trial on the general grounds, and more particularly that the conviction was based on circumstantial evidence, which did not exclude every fair and reasonable hypothesis save that of the guilt of the accused.

While the evidence in this case was entirely circumstantial, the facts, as hereinafter set out, were sufficient to authorize the jury to find that the evidence does exclude every other reasonable hypothesis save that of the guilt of the accused, as required to convict on circumstantial evidence. *Code* § 38-109.

Those facts are substantially as follows: The defendant and the deceased lived in a two-room house in a remote section of Walker County. There were two exterior doors to the house, one at the front which was never used, and another at the rear. The deceased occupied one room and the defendant the other. The two rooms were connected by a door. On the night of April 4, 1965, the deceased was shot in the back from a distance of no closer than one and no farther than eight feet. There was a large shotgun blast just below the left shoulder blade, which was lateral and slightly upward, and entered the spinal cord on the left, causing the spinal and vertebral column to be severed. The doctor who examined him and made the autopsy testified that the shotgun blast caused instantaneous death and that "as soon as that blast hit the spinal cord, he dropped right where he was, he was blown into the corner" and that he could not have walked, moved, talked, or said anything after that shotgun blast hit him.

The deceased was found lying on his back in the front room (which could be entered only from the other room) and was fully dressed in white overalls with a heavy coat on. There was no blood on his ankles or legs, nor anywhere else on or about him except around the opening in his back and on the floor where he lay, and a spot of blood on the lower front leg of his overalls. But blood was found on either side of the breach lever of the gun, on a new ax handle in the room, on the right hand of the defendant between the thumb and index finger, on the ring of the wheel chair which defendant, who had no legs, used to move about, and in the pocket of the defendant's trousers. The blood on defendant's hand, on the wheel chair, in defendant's pocket and the spot on the front of deceased's overalls was all type A. Defendant's blood was type A, and the deceased's was type O. The type of the blood on the gun could not be established. The deceased was killed about 9 to 10 p.m. and the doctor, coroner, and sheriff to whom the killing was reported, arrived at the house about midnight. The coroner testified that he noticed a cut and fresh blood on defendant's right hand and asked him about it. He said it was a fungus infection. He had the doctor look at it, who said it was not a fungus. The next day the defendant said he had cut his hand on a piece of tin out near the barn at the end of the ramp, but an examination of the tin revealed no blood on it. Defendant stated that night that the only shells in the house were buckshot, but a shell with number 4 shot and a shell with buckshot were found in the house, and the shotgun had an empty shell in it that had contained number 4 shot. The shotgun had recently been fired. The defendant and deceased had been drinking during the afternoon, and the sheriff testified that he had been drinking before they arrived, and that he was talking loud and boisterously.

The defendant made an unsworn statement in which he stated that he was ". . . Laying on the bed asleep, heard this shotgun blast, man says 'I'm shot,' Newborn Bolt, and I jumped up, he walked in the room where I was and set down beside me hard and laid back a little hard, and that was the last was said out of him. And I set there, I didn't think the man was even shot, thought he was drinking because both of us was. When I

got up, lifted his hand up and laid it over out of the doorway where I could get outside. As I started out through that room, there laid that shotgun, I picked it up and trowed [sic] it back on this couch, went, then went on outside where I could holler and get some help up there. It taken me quite a bit to get help."

It is not necessary to sustain a conviction based upon circumstantial evidence, that the evidence exclude every possibility or every inference that may be drawn from the proven facts, but only that it exclude every reasonable inference and reasonable hypothesis. *Dunson v. State*, 202 Ga. 515, 521 (43 SE2d 504); *Wrisper v. State*, 193 Ga. 157, 164 (17 SE2d 714) and cases cited. Under the evidence, suicide and accidental death are not reasonable hypotheses. It does not appear possible that the deceased could have accidentally or intentionally shot himself in the back with a shotgun from a distance of one to eight feet. The evidence would fully support a conclusion by the jury that he could not have shot himself with a shotgun at the place and in the manner in which he was shot, and that he did not commit suicide. The defendant was in the house at the time of the shooting, and the deceased was found in the house with his spinal cord and column severed. He was shot at close range and the defendant admits that he heard the blast and was in the house when he was shot. There is no evidence that anyone else was at or near the house at the time.

In addition, the conflicting and contradictory statements of the defendant as to his freshly cut and bleeding right hand between the thumb and forefinger, which he first said was fungus, but the next day said he had cut on a piece of tin, on which the officer, upon examination, found no blood, and the fact that blood was found behind the lever which unbreaches the gun which was located behind the hammer on the gun are circumstances from which the jury could conclude that defendant fired the gun and in doing so cut his hand. His blood on the ring of his wheel chair, that he used to move the chair, and his blood on the body of the deceased other than on his back where the blast entered his body, and the uncontradicted testimony of the doctor that the shotgun blast killed deceased instantaneously, and that he did not walk, talk, or move after he was hit, other than being

knocked down, whereas defendant stated that he heard Bolt say, "I'm shot," that then, Bolt walked in the room where he was and sat down beside him hard and then lay back a little hard, and defendant's statement that there were only shells with buckshot in the house when a shell of number 4 shot and one with buckshot were found, and the empty shell was number 4 shot, are circumstances which would, when considered in connection with the other facts and circumstances above set out, fully support the jury's finding that the evidence did exclude every reasonable hypothesis save that of the guilt of the defendant. See *Davis v. State,* 74 Ga. 869; *Fuller v. State,* 109 Ga. 809 (3) (35 SE 298); *Cook v. State,* 114 Ga. 523 (2) (40 SE 703); *Shirley v. State,* 168 Ga. 344 (1, 2) (148 SE 91); *Burke v. State,* 183 Ga. 726 (189 SE 516).

The evidence was sufficient to support the verdict, and the discretion of the trial court in refusing a new trial will not be disturbed. *Burke v. State,* supra.

*Judgment affirmed. All the Justices concur.*