[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 23, 2007
THOMAS K. KAHN
CLERK

No. 05-16139
Non-Argument Calendar

_____

D. C. Docket No. 05-20298-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ENRIQUE VALDES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 23, 2007)**

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Luis Enrique Valdes appeals his conviction for conspiracy to possess

cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 846 and

841(a)(1). Valdes makes four arguments on appeal. First, Valdes argues that his

rights under the Confrontation Clause of the Sixth Amendment were violated when

the district court allowed the Government to introduce at trial, over Valdes's

objection, portions of tape-recorded telephone conversations between Valdes and a

confidential informant whom the Government chose not to call as a witness.

Second, Valdes argues that the Government violated its disclosure obligations

under Giglio v. United States, 405 U.S. 150, 92 S. Ct. 1763 (1972), when it failed

to turn over to him, for use at trial, impeachment evidence regarding the

Government's confidential informant.[1] Third, Valdes argues that the district court

erred in failing to give Valdes's requested jury instruction regarding his alleged

withdrawal from the drug conspiracy. Finally, Valdes argues that the Government

violated the Equal Protection Clause of the Fourteenth Amendment under Batson

v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986),[2] when it struck, allegedly on the

basis of race, three Hispanics from the pool of potential jurors. We will address

---

[1] It is unclear whether Valdes is making an independent argument in this appeal based on an alleged violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); but if he is, we find that any such argument is without merit.

[2] The Fourteenth Amendment does not by its terms apply to actions of the federal government, but the Supreme Court has noted that its "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2, 95 S. Ct. 1225, 1228 n.2 (1975).

each argument in turn.

## I. Sixth Amendment Confrontation Clause

Valdes argues that his Sixth Amendment rights were violated when the district court allowed the Government to admit into evidence a confidential informant's half of tape-recorded telephone conversations with Valdes without requiring that the Government call the informant as a witness. Valdes asserts that the informant's statements were testimonial hearsay inadmissible under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).

We review the district court's decision on admissibility of evidence for an abuse of discretion. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002). We review constitutional questions de novo. United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004).

As an evidentiary matter, the district court did not err in admitting the informant's recorded statements because they were not hearsay. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Statements made by Valdes in the tape-recorded conversations, when presented by the Government, were not hearsay because they were admissions of a party opponent. Fed. R. Evid. 801(d)(2) (a party's own statement offered against him is "not hearsay"). Statements made by the informant

were not hearsay because they were admitted not to prove the truth of the informant's statements but to provide context for Valdes's half of the telephone conversations.[3]  See United States v. Price, 792 F.2d 994, 996 (11th Cir. 1986). Therefore, the district court did not abuse its discretion in admitting the recorded conversations.

Because the informant's statements were not hearsay, and because the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," Crawford, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9, Valdes's Sixth Amendment challenge to his conviction is without merit.[4]  Stated differently, because the informant's portions of the recordings were not admitted to prove the truth of any assertion, there was no Sixth Amendment violation in this case.  See United States v. Tolliver, 454 F.3d 660, 666 (7th Cir. 2006) (rejecting Crawford challenge to introduction of recorded conversations made by Government informant and offered into evidence for

---

[3] The district court in fact gave a limiting instruction to this effect as follows:

The statements of the confidential source are not being admitted as substantive evidence.  They are not being admitted for the truth of the matter asserted or the things that the confidential source says. . . . Instead, they are being admitted solely for the purpose of allowing you to put the statements of the other people in context.

[4] We have no occasion to determine whether the informant's statements were testimonial or non-testimonial.

4

purpose of putting defendant's statements in context; noting that "aside from the testimonial versus nontestimonial issue, a crucial aspect of Crawford, is that it only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted'"); see also United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006) ("One thing that is clear from Crawford is that the [Confrontation] Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement").

## II. The Government's Alleged Giglio Violation

Valdes argues that his ability to impeach the confidential informant was improperly limited. He asserts that, under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 1763 (1972), the Government was required to provide impeachment information regarding the confidential informant but failed to do so.[5]

"In order to succeed on a Giglio challenge, the defendant must demonstrate that the prosecutor knowingly used perjured testimony, or failed to correct what he

---

[5] Valdes further argues (1) that he should have been allowed to question Government witnesses about the informant's bias and motivation and (2) that the district court prevented him from impeaching the informant by ruling that, should Valdes choose to call the informant as a witness, the informant would not be designated as a hostile witness and thus Valdes could not ask her leading questions. These arguments are without merit because the informant did not testify, and "[t]he law is clearly established that one may not introduce evidence to impeach a witness who does not testify." United States v. Williams, 954 F.2d 668, 672 (11th Cir. 1992). We review for abuse of discretion a district court's decision to limit the scope of a party's cross examination, see United States v. Tokars, 95 F.3d 1520, 1531 (11th Cir. 1996); we find no abuse of discretion here.

subsequently learned was false testimony, and that the falsehood was material."

United States v. Vallejo, 297 F.3d 1154, 1163-64 (11th Cir. 2002) (internal

quotation marks omitted). Under Giglio, the Government is required to turn over

to a criminal defendant any impeachment evidence that is likely to cast doubt on

the reliability of a witness whose testimony may be determinative of guilt or

innocence. United States v. Jordan, 316 F.3d 1215, 1226 n.16, 1253 (11th Cir.

2003).

In this case, the Government had no Giglio obligation with regard to the

confidential informant. Giglio requires the Government to provide impeachment

information about testifying witnesses, and the informant did not testify as a

witness at trial. See Jordan, 316 F.3d at 1226 n.16, 1253; see also Smith v. Kemp,

715 F.2d 1459, 1467 (11th Cir. 1983). The Government's refusal to disclose to

Valdes impeachment evidence regarding its confidential informant did not violate

Giglio.[6]

### III. The Jury Instruction

Valdes argues that the district court erred in refusing to give a jury

---

[6] We have thoroughly examined the transcripts of the tape-recorded conversations that were introduced at trial and conclude that the statements made by the confidential informant have little or no probative value in this case. Rather, it is Valdes's own statements on the tapes, apart from anything said by the confidential informant, that clearly demonstrate his participation in arranging the drug transaction that was to be carried out on March 3, 2005.

instruction on Valdes's alleged withdrawal from the drug conspiracy. Valdes says that he was entitled to have the district court give any jury instruction for any theory of defense supported by the evidence, and that the basis for his requested withdrawal instruction was that he withdrew from the conspiracy when he called off the cocaine sale during a telephone conversation with the confidential informant.

We review "a district court's refusal to give a jury instruction requested by the defense for an abuse of discretion." United States v. Dulcio, 441 F.3d 1269, 1275 (11th Cir. 2006). "For the denial of a requested jury instruction to be reversible error a defendant must show that the instruction: (1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury." Id. (internal quotation marks omitted).

Unlike criminal conspiracy generally, a conspiracy to commit a drug crime prohibited by 21 U.S.C. § 846 does not require for completion the carrying out of an overt act in furtherance of the underlying drug crime. United States v. Garcia, 655 F.2d 59, 62 (5th Cir. Unit B 1981).[7] Valdes's proposed jury instruction on

_____

[7] Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

7

withdrawal stated that the conspiracy would not become complete until an overt act in furtherance of the underlying drug crime was committed. Valdes wanted to argue to the jury that he could have withdrawn from the putative conspiracy at any time before an overt act was committed and that he did in fact withdraw from the conspiracy before the drug transaction was complete. The jury instruction proposed by Valdes, however, was not a correct statement of the law regarding the type of conspiracy with which he was charged, and, therefore, the district court did not err in refusing to give it. See Dulcio, 441 F.3d at 1275.

### IV. The Batson Challenge

Valdes, a Hispanic male, argues that the Government violated Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), by using three of its four peremptory challenges to strike other Hispanic males from the pool of potential jurors. Valdes asserts that the use of those strikes in that manner constitutes a prima facie case of discrimination and that the Government's proffered race-neutral reasons were pretextual.

We review the district court's resolution of a Batson challenge with great deference. United States v. Allen-Brown, 243 F.3d 1293, 1296 (11th Cir. 2001). "A district court's finding as to why a juror is excused is an issue of fact, and as such, it will not be disturbed on appeal 'unless it is clearly erroneous or appears to

8

have been guided by improper principles of law.'" Id. at 1297.

"The Batson three-step procedure for evaluating an objection to a peremptory challenge is as follows: (1) the objector must make a prima facie showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination." Id.

Valdes raised his Batson objection in response to the striking of a third Hispanic male juror from the jury pool. The district court did not clearly err in determining that the Government's race-neutral explanation for striking this juror was legitimate and that Valdes had not carried his burden of demonstrating purposeful discrimination. The reasons proffered by the Government were that the juror was an attorney from another country and knew Valdes's attorney. Although the juror in question was the third Hispanic male the Government had stricken from the jury pool, the Government had left on the jury at least three other Hispanics. See United States v. Puentes, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of [Hispanic] jurors [on the empaneled jury] does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the [discrimination] claim"). Valdes

9

presented no argument to the district court as to why the Government's proffered reasons might be insufficient or pretextual, and the district court accepted the Government's proffered reasons, thus determining that Valdes had failed to carry his burden of demonstrating that the Government's use of its peremptory strike was racially discriminatory. This finding was not clearly erroneous.

As Valdes did not request separate explanations for the Government's challenges to the first two Hispanic males struck from the jury, any <u>Batson</u> objection to their exclusion was waived. <u>See</u> <u>United States v. Cashwell</u>, 950 F.2d 699, 704 (11th Cir. 1992).

Upon careful consideration of the parties' briefs and a thorough review of the record, we find no reversible error. Accordingly, Valdes's conviction is

**AFFIRMED.**