**FIFTH DIVISION
PHIPPS, P. J.,
DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 13, 2016**

# In the Court of Appeals of Georgia

A16A1279. JONES v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Torrell Jones was convicted of possessing a controlled substance outside of its original container, trafficking in heroin, and possessing heroin with the intent to distribute. Jones appeals from the trial court's denial of his motion for new trial, contending that (1) the State failed to present sufficient evidence to support his conviction for trafficking in heroin; (2) the court improperly admitted into evidence a recorded telephone call between Jones and a person who did not testify at trial; (3) the court erred by permitting a law-enforcement officer to testify about the effects of heroin; (4) the court failed to consider the conviction as the "thirteenth juror" when it denied his motion for new trial; and (5)

the court erred in denying a motion for mistrial after an improper comment from a State witness. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reflects that in April 2012, law enforcement received information that, upon placing a phone call to a certain individual, a black Chrysler 300 would approach a Piggly Wiggly in Athens, Georgia, traveling from the east on Highway 78, for purposes of making a drug transaction. As a result of this information, law enforcement searched the area around the Piggly Wiggly and located a black Chrysler 300 parked in front of a nearby apartment. Officers then learned through a trace of the license plate that the vehicle belonged to Torrell Jones and another person not relevant to this appeal.

With this information in hand, law enforcement engaged in surveillance of the black Chrysler 300 at the apartment complex, and an officer was instructed to stop the vehicle if it left the apartment and was en route to the Piggly Wiggly following a monitored phone call. A call was then placed by an informant and recorded by law enforcement, with a detective monitoring the call as it was made. During the call, a negotiation was made for a drug transaction. Then, after the call concluded, officers observed the black Chrysler 300 depart from the apartment complex and travel to the

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

Piggly Wiggly with Jones driving. A stop was executed, and in addition to Jones, officers encountered a passenger, Nytasia Pope, who appeared to be "very nervous." Officers found $3,100 in cash on Jones, and a small bag containing 1.89 grams of heroin was found hidden in Pope's private area. After interacting with Jones during the investigation, the detective who monitored the earlier call identified Jones and Pope's voices as those heard on the receiving end of the call placed by the informant.

After their vehicle was stopped, Jones and Pope were taken back to the apartment where the vehicle had previously been parked, and officers subsequently executed a search warrant at the residence. Inside the apartment's kitchen, officers located a tea box containing a bag of rice surrounding another plastic bag with 81.68 grams of heroin—the largest amount of heroin ever seized at one time in Athens-Clarke County. Additionally, officers found a small knife, a mortar, and a pestle, all with residue that was consistent with heroin. They also located tally sheets used to record drug transactions, a bottle of a cutting agent commonly used in the distribution of heroin, and three sets of digital scales. Finally, officers located a checkbook with Jones's name and the address of that apartment. Jones was subsequently tried for and convicted of the offenses enumerated *supra*. This appeal follows.

At the outset, we note that when a criminal conviction is appealed, the appellant no longer enjoys a presumption of innocence,[2] and the relevant question is whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] We are not at liberty to weigh the evidence or determine witness credibility, and the jury's verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[4] With these guiding principles in mind, we turn now to Jones's enumerations of error.

1. First, Jones challenges the sufficiency of the evidence as to his conviction for trafficking in heroin. Specifically, Jones contends that the evidence was insufficient to show that he constructively possessed the heroin discovered in the

---

[2] *Arbegast v. State*, 332 Ga. App. 414, 415 (1) (773 SE2d 283) (2015); *Westbrooks v. State*, 309 Ga. App. 398, 399 (1) (710 SE2d 594) (2011).

[3] *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001); *Westbrooks*, 309 Ga. App. at 399-400 (1).

4

apartment and that, even if he did possess the heroin, the evidence was insufficient to show that he knew the weight of the heroin. We disagree as to both contentions.

(a) *Jones jointly and constructively possessed the heroin*. Jones maintains that the evidence was insufficient to show that he constructively possessed the heroin discovered in the apartment's kitchen. We disagree.

At the time Jones was alleged to have committed trafficking in heroin (April 23, 2012), OCGA § 16-13-31 (b) provided that "[a]ny person who knowingly sells, manufactures, delivers, brings into this state, or has possession of 4 grams or more of . . . heroin, as described in Schedules I and II, . . . commits the felony offense of trafficking in illegal drugs[.]"[5] It is well established that possession of drugs can be "actual or constructive, sole or joint."[6] A person has actual possession of a thing if he or she "knowingly has direct physical control of it at a given time."[7] And a person who, though not in actual possession, "knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive

---

[5] Former OCGA § 16-13-31 (b) (2012).

[6] *Maddox v. State*, 322 Ga. App. 811, 812 (746 SE2d 280) (2013) (punctuation omitted); *accord Richardson v. State*, 305 Ga. App. 850, 852 (700 SE2d 738) (2010).

[7] *Maddox*, 322 Ga. App. at 812 (punctuation omitted); *accord Vines v. State*, 296 Ga. App. 543, 545 (1) (675 SE2d 260) (2009).

5

possession of it."[8] Finally, if one person alone has actual or constructive possession of a thing, that person has sole possession, but "if two or more persons share actual or constructive possession of a thing, possession is joint."[9]

Here, Jones and Pope were jointly indicted for possessing more than 28 grams of heroin.[10] And as we have previously held, the equal-access rule[11] has no application when, as here, "all persons having access to the contraband are alleged to have been in joint, constructive possession of that contraband."[12] Of course, when constructive

---

[8] *Maddox*, 322 Ga. App. at 812 (punctuation omitted); *accord Vines*, 296 Ga. App. at 545 (1).

[9] *Maddox*, 322 Ga. App. at 812 (punctuation omitted); *accord Vines*, 296 Ga. App. at 545 (1).

[10] Pope was not tried with Jones.

[11] We note that the equal-access defense is "based on the rule that merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." *Nelson v. State*, 199 Ga. App. 487, 487-88 (1) (405 SE2d 310) (1991) (punctuation omitted); *see also Ely v. State*, 241 Ga. App. 896, 898 (528 SE2d 532) (2000) ("[T]he equal access rule applies only if persons other than the defendant and members of his immediate household had equal opportunity to commit the crime.").

[12] *McDade v. State*, 175 Ga. App. 204, 205 (1) (332 SE2d 672) (1985); *see, e.g.*, *McCants v. State*, Case No. A16A1177, 2016 WL 5407551, at *3 (Ga. App. Sept. 28, 2016) ("The [equal-access] rule, conceptually and historically, has no application [when], as here, all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that

6

possession is based upon circumstantial evidence, the facts must both be consistent with the hypothesis of guilt and exclude every other reasonable hypothesis.[13] The proved facts, however, need exclude only "*reasonable* hypotheses—not bare possibilities that the crime could have been committed by someone else,"[14] and the jury generally decides questions of reasonableness.[15]

---

contraband." (punctuation omitted)); *Castillo v. State*, 166 Ga. App. 817, 822 (305 SE2d 629) (1983) (same).

[13] *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008); *see also O'Neill v. State*, 285 Ga. 125, 125 (674 SE2d 302) (2009) ("The law is well-established that to warrant a conviction based on circumstantial evidence, the State must prove not only that the evidence is consistent with the hypothesis of guilt, but that every other reasonable hypothesis of nonguilt is excluded." (punctuation omitted)).

[14] *Prather*, 293 Ga. App. at 313 (1) (punctuation omitted); *see also Samsell v. State*, 222 Ga. 235, 238 (1) (149 SE2d 367) (1966) ("It is not necessary to sustain a conviction based upon circumstantial evidence, that the evidence exclude every possibility or every inference that may be drawn from the proven facts, but only that it exclude every reasonable inference and reasonable hypothesis.").

[15] *Prather*, 293 Ga. App. at 313 (1); *see also Chapa v. State*, 288 Ga. 505, 506 (1) (705 SE2d 646) (2011) ("Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." (punctuation omitted)).

As previously noted, the 81.68 grams of heroin were discovered inside of a tea box in the kitchen of the apartment. And during a protective sweep performed before execution of the search warrant, officers did not locate any other individuals inside the apartment.[16] Later, officers found a checkbook inside the apartment that listed both the apartment's address and Jones's name. Moreover, in addition to the large amount of heroin found hidden in the tea box, officers also discovered numerous other items throughout the apartment that were related to the distribution of heroin and were *not* hidden—*i.e.*, the drug-transactions tally sheet; three sets of digital scales (one of which was in the kitchen with powder residue and rice fragments); the knife, mortar, and pestle with residue consistent with heroin; and the cutting agent commonly used in the distribution of powdered drugs. Finally, when Jones and Pope were searched, officers discovered $3,100 in cash on Jones and a small baggie of heroin hidden in Pope's private area. This combined circumstantial evidence was

---

[16] When officers surveilled Jones's vehicle as it was parked at the subject apartment—with the exception of a person who arrived and left after only two to three minutes and another person who left but whose arrival had not been observed—law enforcement did not see anyone else arrive at or leave the apartment except for Jones and Pope, who departed after the monitored phone call in which Jones negotiated a drug transaction.

sufficient for the jury to conclude that Jones jointly and constructively possessed the large quantity of heroin discovered in the kitchen.[17]

(b) *Jones knew the weight of the heroin*. Jones also argues that even if the evidence was sufficient to show that he constructively possessed the heroin located in the kitchen, the evidence was insufficient to show that he knew the weight of the heroin exceeded 28 grams. Again, we disagree.

As previously noted, at the time Jones was alleged to have committed trafficking in heroin (April 23, 2012), OCGA § 16-13-31 (b) provided that "[a]ny

---

[17] *See Cox v. State*, 300 Ga. App. 109, 111 (684 SE2d 147) (2009) (holding that evidence was sufficient to find that defendant constructively possessed narcotics discovered in kitchen when "[defendant's] personal papers were found in the apartment, and the fact that he had a key to the apartment support[ed] the jury's finding that [the defendant] possessed control over the apartment"); *Whitfield v. State*, 217 Ga. App. 402, 405 (3) (457 SE2d 682) (1995) (holding that evidence was sufficient to show defendant's constructive possession of controlled substances when, although others were present in apartment at time substances were seized, defendant resided in apartment with named lessee, a large amount of cash was found on defendant's person, and defendant had previously sold cocaine). *Cf. Jackson v. State*, 306 Ga. App. 33, 36 (1) (b) (701 SE2d 481) (2010) (holding that evidence was insufficient to find that defendant constructively possessed baggies of cocaine discovered in upstairs bedroom of apartment when defendant was located on the first floor of apartment as law enforcement entered and was "trying to eat a baggie of marijuana," but "[n]o other drugs, drug-related paraphernalia, or cash were found on the first floor" and "no evidence was introduced to show that [the defendant] resided in the apartment, which might authorize an inference that he possessed the property therein").

person who *knowingly* sells, manufactures, delivers, brings into this state, or has possession of 4 grams or more of . . . heroin, as described in Schedules I and II, . . . commits the felony offense of trafficking in illegal drugs[,]"[18] and "[i]f the quantity of such substances involved is 28 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $500,000.00."[19]

In *Scott v. State*,[20] the Supreme Court of Georgia ruled that the plain language of the statute, as it then existed,[21] "dictates the conclusion that knowledge of the quantity of the drug was an element of the crime."[22] In so holding, the Court explained that this (prior) version of the statute "contains express scienter requirements, that is, knowledge of the nature and amount of the drug and of being

---

[18] Former OCGA § 16-13-31 (b) (2012) (emphasis supplied).

[19] Former OCGA § 16-13-31 (b) (3) (2012).

[20] 295 Ga. 39 (757 SE2d 106) (2014).

[21] The General Assembly amended the statute, effective July 1, 2013, to remove "knowingly." *See* Ga. Laws 2013, Act 84, § 4; *see also Scott*, 295 Ga. at 41 (2) (explaining that "[i]n a 2013 amendment to OCGA § 16-13-31, the General Assembly deleted 'knowingly'").

[22] *Scott*, 295 Ga. at 40 (1).

10

in possession of it."[23] Thus, because "knowledge" was part of the offense, our Supreme Court held that the State had the burden of proving the defendant's guilty knowledge.[24] Accordingly, in prosecutions for this offense under the prior statute, the State was required to prove that the defendant had knowledge of the weight of the controlled substance.[25]

Here, the quantity of heroin discovered in the kitchen weighed 81.68 grams—nearly *three times* the threshold weight of 28 grams under the relevant statute. And as discussed *supra*, although the heroin was hidden within a tea box in the kitchen, other items commonly associated with drug distribution were located in the kitchen in plain view—including a digital scale, a cutting agent, cutting tools, and a tally sheet to record amounts of drugs sold. This circumstantial evidence was sufficient to show that Jones knew that the heroin found in the kitchen weighed 28 grams or more.[26]

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 42 (3).

[26] *See Scott v. State*, 331 Ga. App. 395, 398 (1) (771 SE2d 93) (2015) (holding that evidence was sufficient to show that defendant knew he possessed at least 28 grams of cocaine when the discovered cocaine weighed more than double the amount

11

2. Next, Jones asserts that the trial court erred in permitting the State to play a recording of the monitored phone call between the informant and Jones when the informant did not testify at trial. Jones asserts both that the informant's statements amounted to inadmissible hearsay and that he was deprived of his Sixth Amendment right of confrontation.[27] Yet again, we disagree.

The recording of the monitored phone call reflects that when the call was placed, Pope answered and then handed the phone to Jones when the informant asked for "TJ." The informant then told Jones that he needed a "G," and Jones replied, "Alright. I got you." The informant also inquired as to whether Jones had another

---

for trafficking, and officers discovered tools used to weigh and distribute the drug); *Robinson v. State*, 331 Ga. App. 872, 877 (772 SE2d 223) (2015) (physical precedent only) (holding that evidence was sufficient to show defendant knew weight of cocaine when cocaine weighed nearly ten times the statutory trafficking threshold amount); *Freeman v. State*, 329 Ga. App. 429, 432 (1) (765 SE2d 631) (2014) (holding that evidence was sufficient to show defendant knew that he possessed more than 28 grams of crack cocaine when, *inter alia*, the discovered crack cocaine weighed nearly two times the trafficking threshold and was hidden in a plastic bag in defendant's bedroom). *Cf. Childs v. State*, 330 Ga. App. 727, 731 (1) (769 SE2d 147) (2015) (holding that evidence was insufficient to show that defendant knew weight of cocaine when quantity was just in excess of 28 grams and there was no evidence of scales or other items used to measure, weigh, or package contraband).

[27] *See* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"); *see also* GA. CONST. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

unintelligible substance available, and Jones replied, "No, not at all. Not right now." The informant then asked about a price break on "two Gs," to which Jones responded, "No, it's still $150. Let me know what you got [sic] toward the second one and I'll work with you." Hearing this, the informant advised Jones that he could "throw you $75 now for the second one" or, in other words, pay "half of it." Jones responded, "Oh yeah. Bring the other piece. Yeah, I could do that for you." The detective who monitored the call testified that, based upon his training and experience, this conversation was a negotiation of a drug transaction, and that "G" is a slang term used to refer to a gram of heroin.

In admitting the recording,[28] the trial court ruled that the informant's statements were admissible to provide context for Jones's responses to those statements, not that the informant's statements were admitted to prove the truth of the matter asserted.[29]

---

[28] We note that because this case was tried after January 1, 2013, our new Evidence Code applies. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[29] *See* OCGA § 24-8-801 (c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted");OCGA § 24-8-802 ("Hearsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").

13

As for Jones's statements, the court determined that they were admissible as admissions of a party opponent.[30] Jones argues that the trial court erred in making these determinations.

In a case that predates the decision of the Supreme Court of the United States in *Crawford v. Washington*,[31] the United States Court of Appeals for the Eleventh Circuit held that the introduction of taped conversations did not violate a defendant's Sixth Amendment right to confrontation when "the trial court ruled that the tapes as they relate to [the non-testifying speaker] are not offered to prove the truth of the matter, and are therefore not hearsay."[32] And because the statements were not

---

[30] *See* OCGA § 24-8-801 (d) (2) (A) ("Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is[ ] . . . [t]he party's own statement, in either an individual or representative capacity[.]"); *see also* RONALD L. CARLSON & MICHAEL SCOTT CARLSON, CARLSON ON EVIDENCE 534 (4th ed. 2016) ("While courts and commentators refer to 'admissions,' statements admissible under the doctrine need not 'admit' anything in the colloquial sense of the word. Rather, the doctrine covers any statement that a party has made that is offered against him at a later trial.").

[31] 541 U.S. 36, 50-51 (124 SCt 1354, 158 LE2d 177) (2004) (holding that the Confrontation Clause applies with equal force to in-court testimony and "testimonial" out-of-court statements).

[32] *United States v. Price*, 792 F2d 994, 996 (11th Cir. 1986).

14

inadmissible hearsay, "but rather were offered to put into context those statements of [the defendant], [the non-testifying speaker] is not subject to impeachment[.]"[33]

Post-*Crawford*, the Eleventh Circuit has continued to hold that statements offered by a non-testifying speaker are not hearsay and do not violate the Confrontation Clause when the statements are "not offered for their truth, but only to place . . . [the defendant's] statements in context."[34] And here, that is exactly what the informant's recorded statements did—provided context for Jones's portion of the

---

[33] *Id.*

[34] *United States v. Makarenkov*, 401 Fed. Appx. 442, 445 (I) (11th Cir. 2010); *see United States v. Boykins*, 380 Fed. Appx. 930, 933 (II), 934 (II) (11th Cir. 2010) (noting that "a confidential informant's recorded statements offered . . . to give context to a defendant's statements are not hearsay because they are not offered for the truth of the matter asserted," and holding that "the district court did not err in admitting the recorded conversations because they were neither hearsay nor barred by the Confrontation Clause," the defendant's "statements on the tape are not hearsay because they are his own admissions," and the informant's statements "are not hearsay because they were not offered for the truth of the matter asserted"); *United States v. Valdes*, 214 Fed. Appx. 948, 950 (I) (11th Cir. 2007) (holding that district court did not err in admitting recorded conversations between defendant and non-testifying informant when defendant's statements were admissions of a party opponent and non-testifying informant's statements were "admitted not to prove the truth of the informant's statements but to provide context for [the defendant's] half of the telephone conversations").

telephone conversation, which entailed admissions of a party opponent.[35] Thus, because the informant's statements were not hearsay, "and because the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted,"[36] the trial court did not err in admitting the recording, and this enumeration of error is without merit.[37]

3. Jones also argues that the trial court erred by permitting a law-enforcement officer to testify about the pernicious effects of heroin and addiction. We disagree that the trial court abused its discretion in this regard.[38]

---

[35] *See United States v. Tolliver*, 454 F3d 660, 662-63 (I), 665-66 (II) (A) (7th Cir. 2006) (Manion, J.) (holding that the admission of recorded conversations entailing controlled purchases of crack cocaine did not violate the Confrontation Clause when, although participant did not testify, his "statements were admissible to put [the defendant's] admissions on the tapes into context, making the admissions intelligible for the jury," and further holding that defendant's statements were admissions of a party opponent).

[36] *Valdes*, 214 Fed. Appx. at 950 (I) (punctuation omitted).

[37] *See Tolliver*, 454 F3d at 662-63 (I), 665-66 (II) (A); *see also United States v. Gajo*, 290 F3d 922, 930 (II) (A) (7th Cir. 2002) ("[S]tatements are not hearsay to the extent they are offered for context and not for the truth . . . of the matter asserted.").

[38] *See, e.g.*, *Thornton v. Hemphill*, 300 Ga. App. 647, 650 (2) (686 SE2d 263) (2009) ("[T]he trial court has wide discretion to admit testimony of questionable relevance." (punctuation omitted)); *Collins & Assocs. v. Henry Cnty. Water & Sewerage Auth.*, 290 Ga. App. 782, 784 (2) (661 SE2d 568) (2008) (same).

16

Over numerous objections by Jones, the State was permitted to present the testimony of an officer who described heroin's deleterious effect on individuals and its addictive nature. The State argued that this testimony "puts in context what the substance is" and that it was "trying to provide some context for what heroin is." And on appeal, the State further argues that the testimony was "relevant to explain . . . why someone may engage in an enterprise to distribute heroin and possess a trafficking amount," to "demonstrate . . . how heroin's effect on [a] user . . . would provide a motive for an individual to engage in distributing heroin to make money," and to explain why heroin is a Schedule I controlled substance.

The State's assertions as to the relevancy of the subject testimony are not especially convincing, but OCGA § 24-4-401 sets a low threshold for relevancy,[39]

---

[39] *See* OCGA § 24-4-401 ("As used in this chapter, the term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see also* OCGA § 24-4-402 ("All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible."). *See generally* CARLSON, *supra* note 30, at 98 ("Rule 401 is a clear statutory preference for jurors to hear all admissible and helpful evidence because there is a correlation between the amount of information admitted and the accuracy of verdicts." (quoting Lee D. Schinasi, *Teaching the "Portraits, Mosaics and Themes" of the Federal Rules of Evidence*, 29 MISS. C. L. REV. 83, 93 (II) (A) (1) (2010)).

while OCGA § 24-4-403 requires that relevant evidence be "*substantially* outweighed by the danger of unfair prejudice"[40] in order to be excluded.[41] And in evaluating a trial court's ruling under OCGA § 24-4-403, we must "view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact."[42] Given these considerations, we affirm the trial court's admission of the testimony in question.[43]

---

[40] OCGA § 24-4-403 (emphasis supplied). *See generally* CARLSON, *supra* note 30, at 97 ("The adoption of the prejudice standard from the Federal Rules of Evidence marks a change authorizing the admission of a greater volume and variety of evidence for litigants at trial. This is because it places a heavier burden on parties seeking to exclude evidence on grounds of prejudice, requiring them to demonstrate that its probative value is *substantially* outweighed by the danger of *unfair* prejudice.").

[41] *See* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

[42] *United States v. LaFond*, 783 F3d 1216, 1222 (III) (A) (11th Cir. 2015) (punctuation omitted); *accord United States v. Bradberry*, 466 F3d 1249, 1253 (I) (11th Cir. 2006).

[43] *See United States v. Worthington*, 145 F3d 1335 (Table), 1998 WL 279379, at *8 (II) (D) (3) (6th Cir. 1998) (affirming district court's admission of testimony as to the effects of crack cocaine addiction on the body, despite less than overwhelmingly convincing arguments by the prosecution as to the testimony's relevancy, because Rule 401 sets low threshold as to relevancy, Rule 403 sets high threshold for exclusion, and district court's decision must be reviewed with high level of deference); *see also Bradberry*, 466 F3d at 1253 (I) ("[T]he [trial] court is uniquely

18

4. Next, Jones contends that the trial court failed to consider the conviction as the "thirteenth juror" when it denied his motion for new trial. Once again, we disagree.

On motion for new trial, even if the evidence is legally sufficient to sustain a conviction, the trial court may order a new trial if the "verdict of a jury is found contrary to evidence and the principles of justice and equity"[44] or if the verdict is "decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."[45] That said, the trial court's discretion to grant a new trial under these circumstances "should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."[46] And in exercising discretion as the "thirteenth juror,"

---

situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas. Close questions of admissibility under Rule 403 give rise to the abuse of discretion standard of review and fall squarely within the ambit of the [trial] court's sound discretion." (citation and punctuation omitted)).

[44] OCGA § 5-5-20.

[45] OCGA § 5-5-21.

[46] *Wiggins v. State*, 330 Ga. App. 205, 210 (c) (767 SE2d 798) (2014) (punctuation omitted); *accord White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115)

the trial court must consider some of the things that it cannot when "assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence."[47] When the record reflects that the trial court failed to exercise this discretion, we will vacate and remand for the court to fulfill this obligation.[48]

Here, Jones argues that it cannot be determined by the trial court's order whether the court exercised its discretion as the "thirteenth juror." But as the State correctly notes, nothing in the trial court's order indicates that it did *not* exercise its discretion or that it in any way applied the incorrect standard to its review.[49] And as we have previously explained,

---

(2013).

[47] *Wiggins*, 330 Ga. App. at 210 (c) (punctuation omitted); *accord White*, 293 Ga. at 524 (2).

[48] *Leggett v. State*, 331 Ga. App. 343, 344 (2) (771 SE2d 50) (2015); *Copeland v. State*, 325 Ga. App. 668, 672 (3) (754 SE2d 636) (2014).

[49] *Cf. Wiggins*, 330 Ga. App. at 211 (c) ("[T]here is no evidence that the . . . judge exercised discretion, weighed the evidence, and determined as the 'thirteenth juror' whether the verdict was against the great weight of the evidence or offended the principles of justice and equity. The order denying [the] motion for new trial shows that the trial court made only the legal determination that the evidence was sufficient . . . .").

in interpreting the language of an order overruling a motion for a new trial, it must be presumed that the trial judge knew the rule as to the obligation thus devolving upon him, and that in overruling the motion he did exercise this discretion, unless the language of the order indicates to the contrary and that the trial judge agreed to the verdict against his own judgment and against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact.[50]

There being no such indication here, this enumeration of error is without merit.

5. Finally, Jones argues that the court erred in denying a motion for mistrial after an improper comment from a State witness. But because Jones failed to provide citations to the record and legal authorities in support of this contention, he has abandoned it for appellate review.[51]

---

[50] *Leggett*, 331 Ga. App. at 344-45 (2) (punctuation omitted); *accord Conley v. State*, 329 Ga. App. 96, 100 (2) (763 SE2d 881) (2014).

[51] *See* Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."); Court of Appeals Rule 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration."); *see also Slmbey v. State*, 288 Ga. App. 717, 718 (655 SE2d 223) (2007) (deeming arguments abandoned due to failure to provide citations to the record and supporting legal authority).

For all of the foregoing reasons, we affirm Jones's convictions.

*Judgment affirmed. Peterson, J., concurs. Phipps, P. J., concurs in Divisions 1, 2, 4, and 5 and in the judgment only in Division 3.*