**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 4, 2024**

# In the Court of Appeals of Georgia

A24A0945. THE STATE v. PEPPERS

PADGETT, Judge.

This is the second appearance of this case before this Court. Carrie Jill Peppers was found guilty of the offenses of second-degree murder, second-degree cruelty to children, and involuntary manslaughter following a jury trial, and a sentence was imposed by the trial court. Thereafter, Peppers filed a motion for new trial, which was granted by the trial court.

In *State v. Peppers*, 369 Ga. App. 189 (892 SE2d 816) (2023) ("*Peppers I*"), we vacated the trial court's order granting a motion for new trial and remanded the case for further actions consistent with our opinion. *Peppers I*, 369 Ga. App. at 193. The trial court subsequently entered an order from which the State now appeals. For the

reasons set forth herein, we again vacate the trial court's order which was entered following our decision in *Peppers I* and direct that further proceedings be conducted that are consistent with this opinion.

The facts of the underlying case were set forth in *Peppers I* as follows:

Viewed in the light most favorable to the jury's verdict, the record shows that on April 8, 2020, an investigator with the Georgia Division of Family and Children Services ("DFCS") had a video conference with Peppers—who was in the hospital after giving birth to a baby boy—to educate her on safe sleep practices for infants. The investigator advised Peppers to notify him when she was discharged from the hospital so they could complete a virtual home visit at her sister's residence, where Peppers had been instructed to go after being discharged. Following this safety training, Peppers signed an acknowledgment form, which, among other things, noted: "Sleeping with my baby increases the risk of my baby dying from suffocation, SUIDS [sudden unexplained infant death syndrome], or SIDS [sudden infant death syndrome]. My baby should be placed on his or her back when sleeping." The DFCS investigator contacted Peppers again on May 4, 2020, when she was staying in a hotel with the baby and another child, at which point they had another video conference to "rediscuss safe sleep," and the investigator observed Peppers was following the safety plan at that time. Specifically, Peppers obtained a bassinet and was placing the baby on his back with no soft objects in the sleep area.

On May 29, 2020, William Davis—a patrol officer with the Elbert County Sheriff's Office—responded to a 911 call regarding an unresponsive child. When Davis arrived, an emergency medical technician ("EMT") was already on the scene, and Davis observed "a young child laying on the bed with blood coming from his nose and blood on the pillows. . . ." According to the EMT, when she arrived, it was immediately obvious that a six-month-old baby was deceased, and so she had no opportunity to resuscitate him. The EMT spoke with Peppers, who could not provide a specific answer regarding what time the baby went to sleep; but Peppers did say the baby fell asleep cradled in her left arm.

As for Davis, he learned that Peppers was the baby's mother and asked her to step outside to speak with him. Peppers told Davis the baby had gone to sleep, and when she woke up, he was unresponsive and cold to the touch.

Subsequently, Peppers was charged, via indictment, with second-degree murder, second-degree cruelty to children, and involuntary manslaughter. And following trial, a jury convicted her of those offenses. Peppers then filed a motion for a new trial, which the trial court granted, finding there was insufficient evidence to show Peppers's act of co-sleeping with her son caused his death. . . .

*Peppers I*, 369 Ga. App. at 189-190 (citations and punctuation omitted). In *Peppers I*, we found that the trial court's grant of Peppers's motion for new trial was erroneous

3

as a matter of law and vacated and remanded the case for further proceedings consistent with that opinion. *Peppers I*, 369 Ga. App. at 192 (1).

The remittitur was filed with the trial court and the trial court entered a summary order on January 17, 2024, in which the trial court held that Peppers's convictions for second degree murder, second degree cruelty to children and involuntary manslaughter "are hereby vacated," and "that judgments of acquittal be entered on those charges in the indictment." The trial court's order contained no citations to authority, findings of fact or conclusions of law. This appeal followed.

During a trial, a trial court is authorized to consider a defendant's timely motion for directed verdict of acquittal under OCGA § 17-9-1 (a) which provides "[w]here there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense, the court may direct the verdict of acquittal to which the defendant is entitled under the evidence and may allow the trial to proceed only as to the counts or offenses remaining, if any." However, that same authority does not exist in a post-trial setting.

Under OCGA §§ 5-5-20 and 5-5-21, a trial court has limited authority to grant a new trial within the "general grounds" or as a part of the evaluation as the "thirteenth juror." And, under OCGA § 5-5-40, a trial court has the authority to grant a defendant's timely motion for new trial. However, there is no authority that would enable a trial court to enter a judgment of acquittal in a post-trial posture. "[T]here is no provision in Georgia law authorizing a trial court to entertain a motion for judgment of not guilty notwithstanding a verdict of guilty in a criminal case. . . ." *State v. Canup*, 300 Ga. App. 678, 680 (1) (686 SE2d 275) (2009) (citations and punctuation omitted).

A trial court is authorized, under OCGA § 5-5-20, to grant a new trial "in any case where the verdict of a jury is found contrary to evidence and the principles of justice and equity." Under OCGA § 5-5-21, "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." These two statutes do not authorize a trial court to order an acquittal of a defendant who has been convicted of a crime - they merely authorize the trial court to grant a new trial.

5

In *Peppers I*, we found that the trial court improperly granted the motion for new trial on sufficiency grounds and vacated that order. *Peppers I*, 369 Ga. App. at 192 (1). "It is well established that '[a]ny issue that was raised and resolved in an earlier appeal is the law of the case and is binding on this Court,' and that '[t]he law of the case doctrine is not confined to civil cases, but applies also to rulings made by appellate courts in criminal cases.'" *Ross v. State*, 310 Ga. App. 326, 327 (713 SE2d 438) (2011) (citations and punctuation omitted). Where an issue has been specifically litigated and ruled upon by an appellate court, that same specific issue cannot be re-litigated. *Paradise v. State*, 321 Ga. App. 371, 373 (740 SE2d 238) (2013); *Bryson v. State*, 369 Ga. App. 560, 567 (5) (894 SE2d 120) (2023).

The decision in *Peppers I* concluded:

[i]n sum, the trial court erred in granting Peppers's motion for new trial based on its finding that there was insufficient evidence to support her convictions. Suffice it to say, if the court was concerned about the sufficiency or weight of the evidence presented to the jury, it had options for addressing those concerns, such as vacating or reversing Peppers's convictions or granting a new trial in its capacity as the "thirteenth" juror. What it cannot do—absent extraordinary circumstances not applicable here — is grant a motion for new trial based on a

6

determination that there was insufficient evidence to support the defendant's convictions.

*Peppers I*, 369 Ga. App. at 192-193 (2). Therefore, at this stage of the proceedings, the trial court is no longer authorized to grant Peppers's motion for new trial based upon a sufficiency argument. The trial court remains authorized, under OCGA §§ 5-5-20 and 5-5-21, to grant a new trial if the trial court finds that a new trial is warranted under the "general grounds" or within the trial court's role as the "thirteenth juror." When considering a conviction as the "thirteenth juror," the trial court is expected to consider issues it cannot consider when analyzing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of the witnesses and the weight of the evidence. *Jones v. State*, 339 Ga. App. 95, 104-105 (4) (791 SE2d 625 (2016). "[T]he trial court's discretion to grant a new trial under these circumstances 'should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.'" Id. at 104 (citation omitted).

It is clear that the trial court is not authorized to simply enter a post-trial verdict of acquittal as it did in this case. Therefore, the trial court's order that was filed on

January 17, 2024, is hereby vacated and the case remanded for further proceedings consistent with this opinion.[1]

*Judgment vacated and remanded. Dillard, P. J., and Brown, J., concur.*

---

[1] Peppers moved to dismiss the appeal on the grounds that the State's initial brief was filed one day after the deadline for doing so. See Court of Appeals Rule 23 (a). OCGA § 5-6-30 provides that the rules governing appellate practice should be construed liberally to result in a decision on the merits whenever possible. Thus, we deny Peppers's motion to dismiss and exercise our discretion to consider the merits of this appeal.